STATE BANK OF CLEARWATER, NEB., v. INGRAM.

(Circuit Court of Appeals, Eighth Circuit.  October 16, 1916.)

No. 4528.

1 BANKRUPTCY ⊕⟳165(1)—PREFERENCE—VACATION.
    Within four months of proceedings in bankruptcy, and at a time when the bankrupt was insolvent and the defendant bank knew it, the bankrupt transferred to defendant as security for an antecedent debt fire policies under which a loss and claim had arisen.  The bank collected the policies, credited the amounts to the bankrupt on its books, and received his check in payment of a mortgage, which the bank discharged, given by the bankrupt, on lots on which the burnt buildings stood. The bank had no lien on the policies or their proceeds, but had it enforced its mortgage its debt or the major portion would have been satisfied.  *Held*, that the transaction could not be sustained on the theory that the bank, by reason of its mortgage on the lots, was not in the same class with unsecured creditors, and was entitled to obtain full payment in any way it could from general assets, while the remedy of the trustee was to assert by way of subrogation the mortgage lien which the bank had discharged, for as to the policies the bank was an unsecured creditor.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 266;  Dec. Dig. ⊕⟳165(1).]

2. BANKRUPTCY ⊕⟳326—CLAIM—SET-OFF.
    No right of set-off in the bank results from the assignment of the policies, collection and deposit of the proceeds to the bankrupt's credit, and the receipt of the bankrupt's check in payment of its demand in the action by the trustee to recover the preferential payment.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514;  Dec. Dig. ⊕⟳326.]

3. BANKRUPTCY ⊕⟳311(1)—PREFERENCE—VACATION.
    Where a decree for the amount of a preferential payment was recovered by the trustee of the bankrupt, the creditor against whom decree was had may prove his claim as a general creditor upon satisfying the decree.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–499;  Dec. Dig. ⊕⟳311(1).]

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit by J. Q. Ingram, trustee of the estate of John L. James, bankrupt, against the State Bank of Clearwater, Neb.  From a decree for complainant, defendant appeals.  Affirmed.

J. W. Rice, of Norfolk, Neb. (Kelsey & Rice, of Norfolk, Neb., on the brief), for appellant.

Frederick S. Berry, of Wayne, Neb. (Mapes & McFarland, of Norfolk, Neb., on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge.  This is an appeal from a decree that the trustee in bankruptcy recover a voidable preference from the State Bank of Clearwater, Neb.  The trial court found from the evidence the existence of the conditions of fact prescribed by section 60b of

the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [Comp. St. 1913, § 9644]), such as insolvency, the time and effect of the transfer, and knowledge of the creditor, and we think its findings were right. Omitting irrelevant matters, the case reduced to its final terms is as follows:

Within four months of the commencement of the proceedings in bankruptcy, and at a time when the bankrupt was insolvent and the bank knew it, he transferred to it as security for an antecedent debt certain fire insurance policies under which a loss and claim had arisen. He authorized the bank to collect on the policies and apply the proceeds to the debt. Before this transaction the bank had a valid mortgage on the lots on which the burned buildings stood, but it had no lien on the policies or their proceeds. There were other liens on the lots, one prior to the bank's mortgage, and others inferior. The bank collected on the policies, credited the amounts to the bankrupt on its books, and took the bankrupt's check in payment of the old debt. At the same time it discharged its mortgage on the lots. Afterwards the lots were sold under decree in a foreclosure suit to which the trustee in bankruptcy was not a party, and the proceeds were exhausted by the claims of the other lienholders. The value of the real property was not sufficient to pay all the liens upon it, but if the bank had retained and enforced its mortgage it would have received all or the greater part of its claim. Before the transaction with the bank the policies constituted much the greater part of the free assets of the bankrupt available to his general creditors; there was little else. Their unsecured claims were in quite a large amount.

[1] It is contended that the bank, with its prior mortgage on the lots, was not in the same class with unsecured creditors, and that it had a right to obtain full payment in any way it could, whether from the property mortgaged to it or from general assets; also that the remedy of the trustee was to seek the foreclosure suit, become a party, and assert a right of subrogation to the mortgage lien which the bank discharged. The status of a creditor, whether general or secured, is naturally determined by his relation to the property of the bankrupt. As to the policies of insurance the bank was a general creditor. It had no lien or claim upon them. The fact that it had other security did not give it the right to take or seize for itself the unincumbered property of the bankrupt. The actual effect of the assignment of the policies was that the bank was paid in full and the general creditors received but little. When the bank took the assignment with knowledge of the bankrupt's insolvency, it still retained its mortgage on the lots until it received payment from the insurance money. It then discharged its mortgage generally. There was no attempt to save or make good the loss to the general estate. Whether under the circumstances the trustee had a right of subrogation need not be determined. At the best the bank left the succeeding trustee a lawsuit, with its attendant uncertainty and expense, and, if successful, the necessity of protecting himself at the judicial sale against an admitted prior lien. Moreover, an effort of the trustee to secure subrogation would have been complicated by a home-

stead interest of the bankrupt in part of the mortgaged lots. We think the transaction should not be sustained.

[2, 3] No right of set-off in the bank results from the assignment of the policies, the collection, its deposit of the proceeds to the bankrupt's credit and the taking of his check in payment of its demand. Traders' Bank v. Campbell, 14 Wall. 87, 20 L. Ed. 832. The decree of the trial court should be modified, however, by allowing the bank to prove its claim as a general creditor upon payment of the decree against it. Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. 332.

The decree, as so modified, is affirmed.