### In re FRANKLIN BREWING CO.

(District Court, E. D. New York.   March 16, 1920.)

1. **Bankruptcy ⟨⟩467—Order reversing allowance of part of claim for further hearing not final order.**

   Where, on appeal from an allowance by the referee of part of a claim, his computation was adopted, but the allowance was reversed for a new hearing on affirmative defenses, the order was not a final order, and the entire question was before the court on a subsequent appeal from an order allowing the same part of the claim.

2. **Bankruptcy ⟨⟩311(6)—Acceptance of secured bonds, subsequently set aside as preferential, not an accord and satisfaction.**

   Where a corporation issued bonds secured by a mortgage to the executors of a creditor, who was its principal stockholder, and the executors distributed the bonds to the legatees, but the mortgage and bonds were held invalid, as preferential, and were returned, there was no accord and satisfaction, preventing proof of the claim as an unsecured claim.

3. **Bankruptcy ⟨⟩311(2)—Legatees held to have acquiesced in preference obtained by executors.**

   Where a corporation issued mortgage bonds to a creditor's executors, the legatees, who consented to the taking of the bonds by the executors, acquiesced in the preference thereby obtained.

4. **Bankruptcy ⟨⟩311(2)—Attempt to secure preference by those in control of corporation held not to prevent proof of claim.**

   The securing by executors of a creditor and principal stockholder of a corporation of a preference by causing mortgage bonds to be issued to them *held* not such a fraud as required disallowance of the claim as an unsecured claim, though they included in the amount for which the bonds were issued the testator's investment in stock of the corporation, and also a lump sum to cover any possible errors in computation.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Bankruptcy ⊛311(6)—Creditors, surrendering preference, may prove claim.**

When a creditor voluntarily surrenders a preference, he may prove his claim, whether or not he was deliberately attempting to obtain a preference.

**6. Bankruptcy ⊛311(6)—Creditor, compelled to surrender preference, may prove claim.**

A creditor, compelled to surrender his preference, may prove his debt, witnout reference to whether or not he had knowledge of just what he was doing when the preference was created.

**7. Bankruptcy ⊛314(1)—Investment in stock not provable claim against estate of corporation.**

Moneys invested and lost by a creditor of a corporation by subscription to the corporation's stock may not be included in his claim in bankruptcy.

In Bankruptcy. In the matter of the Franklin Brewing Company, bankrupt. On appeal from an order of the referee allowing a claim in part. Exceptions overruled, and claim allowed at the amount found by the referee.

See, also, 257 Fed. 135.

Samuel Evans Maires, of Brooklyn, N. Y., for trustees in bankruptcy.

Henry F. Cochrane, of Brooklyn, N. Y. (Charles E. Hughes and Charles E. Hughes, Jr., both of New York City, of counsel), for claimants.

CHATFIELD, District Judge. As stated in the memorandum filed on August 2, 1919, upon the previous appeal, the computation adopted by the referee seems to be correct. Both parties at that time appealed from an allowance by the referee of a part of the claim. The allowance was reversed and sent back for a new hearing upon two affirmative defenses, and no final judgment was entered either allowing or disallowing the claim. The present order of the referee allows the same portion of the claim after the hearing and decision of the affirmative defenses, and this appeal brings up all questions involved in an allowance of part of a claim. The order of August 2, 1919, approved the amount to be allowed, and thus made it unnecessary for the referee to make different findings as to the amount, unless some new evidence was presented.

[1] A petition to revise the order of August 2, 1919, in matters of law, might have been filed with the Circuit Court of Appeals; but that order was not a final order, and the entire question is now before the court, except that the court cannot on the same record be expected to change its disposition as to the amount of the claim to be allowed. But this disposition must be again formally declared, if the allowance of a part of the claim and a disallowance of the balance is to be upheld. The court, therefore, will reaffirm the finding that no reason is shown by the record for differing from the referee's conclusion as to the amount of the claim.

The only questions which need be considered on the present appeal are whether the defense of accord and satisfaction is maintained, and

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes·

whether the transaction by the executors was a fraud of such a nature that the estate of Claus Doscher is not entitled to disavow the fraud, surrender the bonds held to be preferential, and prove its claim, even to the extent to which it may be held to represent an actual debt. Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790.

[2, 3] The case does not seem to be one of accord and satisfaction, except in so far as any preferential payment to a creditor is for the time being treated by the creditor as full payment. The legatees of the estate of Claus Doscher are still entitled to a distributive share of whatever there is in his estate. They consented to the taking of the bonds by the executors, and thereby acquiesced in what was evidently a preference. But these legatees are not the creditor. They have given back their bonds and mortgage (In re Franklin Brewing Co. [D. C.] 254 Fed. 910), and are still entitled to anything which will take the place of these bonds in the hands of the executors.

If the executors had taken the bonds of an independent railroad, with the knowledge of their legatees, and had distributed them to the legatees, and the turning over of these railroad bonds had been shown to be a preference, then the preferential payment could have been refunded, and the executors would be still entitled to prove their general debt. The legatees would have been entitled to receive whatever dividend was paid on account of the general debt after it was proved.

If, on the other hand, the issuance of bonds by the railroad had been attacked, the situation might have been like one where checks upon a bank had been accepted, then certified, and thereafter the bank had become insolvent. This would not be the case of a preference, but the securities would have become worthless after payment to the creditor.

In the present case the trustees in bankruptcy brought an action (Karasik v. People's Trust Co. [D. C.] 252 Fed. 324, affirmed 252 Fed. 337, 164 C. C. A. 261), to declare the bonds and mortgage void ab initio. They were held to be voidable and preferential on the demand of the trustees in bankruptcy, because issued to directors and stockholders with knowledge of the facts. This was therefore not a payment of securities which proved worthless to a creditor, who then claimed that he had received a preference from the bankrupt estate. It was a payment which rendered the mortgage worthless or fraudulent, because it was preferential. The illegality was not in the acknowledgment of the debt by the issuance of bonds, but in the attempt to pay or secure the debt ahead of other creditors. The executors had no greater claim than the estate, so far as the original debt was concerned. The executors and the legatees both were parties to the creation of the obligations, and are therefore bound by the fraud, for the bonds were not issued until after the death of Claus Doscher. But the Doscher estate was the creditor of the bankrupt. The legatees were merely parties who had a claim against the executors for their distributive shares. The trustees did not make these legatees parties in the litigation to declare the bonds void, and the legatees, therefore, even with knowledge of the transaction, were not bound to do

more than the Doscher estate, and give up the security which was found by the court to be preferential. This they have done, and they certainly will receive ultimately from the executors of the estate of Claus Doscher, deceased, their share of whatever is obtained in place of these securities.

Starting, therefore, with the propositions that the legatees have no claim, except through the executors, that the fraud or wrongdoing was shared by the executors, the directors, and the legatees, that there was no satisfaction of the claim, except in so far as a preferential payment was accepted, and that the fraud was a fraud against other creditors, instead of an attempt to establish a claim with no foundation of debt at all, we must consider whether the deception imposed upon the other creditors was so indivisible, or of such a reprehensible nature, that the claim itself, as a whole, should be disallowed, on the ground that those presenting it are not in a position to ask the equity involved in the allowance of the rights to which, as a matter of law, they would be entitled to the extent of a valid debt.

[4] We can disregard the amount by which the $450,000 issue of bonds exceeded the total debt. This evidently was not the result of any deliberate action, but the amount of the mortgage was put at a lump sum sufficient to cover all of the items found by the bookkeepers, with a margin for possible error much in excess of what was proper or allowable. It was but a part of the same careless and disregardful way in which the entire transaction was carried out. When the inquiry was made, the claim was promptly reduced to the figures which had some apparent foundation in the accounts. But even the legatees and executors are not chargeable with a deliberate intent to steal the funds of the brewery, without some consideration for their claim. One of them, Henry Doscher, was the person who first assumed the responsibility of transferring the items of money paid in by Claus Doscher, deceased (and which, to a great part, were uncollectible, except as they represented stock in the corporation), into an obligation secured by a mortgage. But even Henry Doscher had the basis of these payments for the return of the money which had been put into the corporation, and his wrongdoing was no greater, so far as the allowance of a claim for his actual advances was concerned, than would be the act of any creditor, who, with knowledge of the bankrupt's affairs, obtains a preference from the bankrupt's property.

[5, 6] As was held in the Keppel Case, supra, Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. 332, In re Clark (D. C.) 176 Fed. 955, In re Louis J. Bergdoll Motor Co., 233 Fed. 410, 147 C. C. A. 346, and State Bank v. Ingram, 237 Fed. 76, 150 C. C. A. 278, when a creditor voluntarily surrenders a preference, he may prove his claim, whether or not he was deliberately attempting to obtain a preference; also, when he is compelled to surrender his preference, he may prove his debt, without reference to whether or not he had knowledge of just what he was doing when the preference was created.

As was said in the memorandum in this case filed August 2, 1919, the wrongdoing, so far as the claim allowed by the referee is concerned, is not in the creation of the original debt, but was only in the

attempt to obtain the preference. And this is true, even with respect to that part of the claim which has been disallowed by the referee. Claus Doscher, deceased, and much less his executors and legatees, had no right to seek or to obtain a preference or to so manage the affairs of the Franklin Brewing Company as to create a preference in their own favor. But all of the items which went into the preferential claim were based upon advances of money, and it should not be held that a wrongful use of the debts created by these advances, or of the claims accruing to a stockholder who acquired stock by means of these advances, should deprive that stockholder of proving whatever debt may actually be shown to have existed, of the same rank as the claims of the other general creditors. Nor should the proof of these actual debts be prevented by the stockholder's ill-advised and unfair attempt to include in the preference his other bad investment of moneys, so long as the money was actually advanced and has not been repaid.

[7] On the other hand, the finding of the referee is correct that the moneys which the creditor had invested and lost (in some other way than as a general debt, such as a subscription to stock, etc.) were properly excluded from the claims which should be paid out of the fund for general creditors.

The exceptions of both parties to the allowance of the claim in part, and the disallowance of the balance, respectively, will be overruled, and the claim allowed at the figure found by the referee.