## In re FRANKLIN BREWING CO.

### Appeal of DOSCHER et al.

(Circuit Court of Appeals, Second Circuit.   March 2, 1921.)

#### No. 99.

1. Bankruptcy ☞314(1)—Money lent to bankrupt corporation held not chargeable to purchase of stock.

   On the organization of a brewing company with a capital stock of 5,000 $100 shares, a plant was purchased for $500,000, and paid for with 3,000 shares of stock and the assumption of a mortgage for $200,000, the seller also agreed to buy 2,000 shares more stock from time to time as working capital might be required, and paid $50,000 at the time for 500 shares.   Thereafter from time to time during several years he made advances to the company which were carried on the books as loans and some of which were paid with interest.   The company sold some of the remaining stock and retained the remainder in its treasury.   Held that, on its bankruptcy 14 years after its organization, such loans remaining unpaid could not be treated as stock purchases and a claim therefor disallowed.

2. Bankruptcy ☞311(6)—On cancellation of mortgage as preference, creditor is restored to prior rights as unsecured creditor.

   Where a bankrupt corporation had issued bonds secured by mortgage and such bonds had been accepted by a creditor in satisfaction of his claim, but after bankruptcy the bonds and mortgage were held void as creating a preference by an insolvent under the state law, the creditor was restored to his original rights as an unsecured creditor.

   Rogers, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of the Franklin Brewing Company, bankrupt.   Henry Doscher and others, executors of the will of Claus Doscher, deceased, appeal from an order of the District Court.   Reversed.

For opinion below, see 265 Fed. 301.   See, also, 263 Fed. 512.

Certiorari denied 255 U. S. ——, 41 Sup. Ct. 536, 65 L. Ed. ——.

Henry F. Cochrane, of Brooklyn, N. Y. (C. E. Hughes, of New York City, of counsel), for appellants.

Samuel Evans Maires, of Brooklyn, N. Y., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge.   [1] In June, 1903, Claus Doscher bought at public sale the property of the Malcom Brewing Company which was subject to a mortgage of $200,000 to the Nassau Trust Company, and operated it on his own account until June 30.   On that day he organized the Franklin Brewing Company with a capital of $500,000 in 5,000

shares of $100 each. He, his brother, and his sons were the officers, directors, and holders of all the issued stock. At the first meeting of the board the following proceedings took place:

"To Franklin Brewing Company—Gentlemen: I hereby tender and offer to sell to your corporation the lager beer brewery, ale brewery, malt house, ice plant, and stable, formerly the property of Malcom Brewing Company, located on Franklin & Flushing avenues, in the borough of Brooklyn, city of New York, together with the machinery in said respective places; the horses, harness, trucks and contents of stable, together with the accounts, licenses, chattel mortgages and all the personal property purchased by me from the receivers of Malcom Brewing Company on the first day of July, 1903, the same to embrace all the property included in said sale to me, on the following terms and conditions: ·

"I. I agree to sell the same for the sum of five hundred thousand ($500,000) dollars.

"II. As payment therefor your company is to assume and agree to pay a mortgage for the sum of two hundred thousand ($200,000) dollars held by the Nassau Trust Company as surety and now a lien on said premises, and to issue and deliver to me three thousand (3,000) shares of fully paid up capital stock of a par value of one hundred ($100) dollars each of your corporation.

"III. I further agree that in order to provide working capital for your company, I will from time to time, as such working capital may be required by it, purchase from your company two thousand (2,000) shares of its capital stock.

"Dated, Brooklyn, N. Y., July 30th, 1903. Claus Doscher."

"On motion of Henry F. Cochrane duly seconded, the following resolutions were read and adopted:

"Whereas Claus Doscher has by tender of even date offered to sell to this company all the property of every kind and description, real, personal and mixed formerly belonging to Malcom Brewing Company, and now in the brewery plant located on Franklin and Flushing avenues and Skillman street, in the borough of Brooklyn, city of New York, together with all the accounts now outstanding on the books of said Malcom Brewing Company, and all moneys due or to grow due thereon, and all assets of every kind, sort and description whatsoever which were purchased by the said Claus Doscher at a judicial sale of the assets of said Malcom Brewing Company on the first day of July, 1903, as the same stands on the books kept by the receivers of said Malcom Brewing Company, on the first day of August, 1903, and

"Whereas by the terms of said tender or offer said vendor, Claus Doscher, agrees to sell said property for the sum of five hundred thousand ($500,000) dollars, and as the purchase price thereof agrees to take in payment therefor three thousand (3,000) shares of the fully paid up capital stock of Franklin Brewing Company of a par value of one hundred ($100) dollars each, and an assumption by said Franklin Brewing Company of a mortgage for two hundred thousand ($200,000) dollars held by the Nassau Trust Company, now a lien on the real property embraced in said offer, and

"Whereas said Claus Doscher has so agreed to purchase from said company capital stock up to two thousand (2,000) shares in addition in order to provide working capital for this company as the same shall be required by it, and

"Whereas the directors of said Franklin Brewing Company have caused an inventory to be made of all the property included in this offer, and

"Whereas the books of the said Malcolm Brewing Company, as written up to the first day of July, 1903, show the value of all the assets sold and transferred to said Claus Doscher, and which he now offers to sell and transfer to his company, to be seven hundred and thirty-two thousand six hundred and ninety-three and $9/100$ ($732,693.09) dollars which valuation, after careful investigation and appraisal, the directors of this company have ascertained to be a fair and reasonable valuation of said property.

"Therefore be it resolved that Franklin Brewing Company accept said offer of said Claus Doscher on the terms and conditions set forth in his offer or

tender, and that the officers of this company be and they are hereby authorized, empowered and directed to make any and all arrangements with respect thereto, and to make, execute and deliver instruments in writing necessary to carry into effect the purchase of said property so offered by Claus Doscher.

"And be it further resolved that this company issue forthwith five thousand (5,000) shares of fully paid up capital stock of a par value of one hundred ($100) dollars per share amounting in all to five hundred thousand ($500,000) dollars, which sum has been actually paid in cash and property.

"And be it further resolved that the duly authorized officers of this company forthwith transfer to said Claus Doscher three thousand (3,000) shares of such capital stock pursuant to said agreement to purchase, and that the balance of said issue of capital stock, to wit, two thousand (2,000) shares be retained in the treasury to be sold from time to time in order to provide working capital for this company as the demands of the business may require.

"And be it further resolved that all the acts of the officers of this company are hereby adopted, ratified and confirmed.     Charles Doscher, Secy."

It was plainly the purpose of the corporation to make the unissued 2,000 shares full-paid treasury stock, but this was not accomplished. All the company paid Doscher for the property he conveyed was 3,000 shares of its full-paid capital stock and the assumption of the mortgage of $200,000. The 2,000 shares unissued were not paid for in property nor were they subscribed for by Doscher. They remained the company's property to be used to provide working capital as from time to time the demands of the business might require. They might be sold to any one, but Doscher agreed to purchase them to supply working capital if required.

The term "working capital" evidently meant money to be put into the business and to stay there. It would not follow that moneys advanced by Doscher from time to time and repaid by the company out of its earnings was to be regarded as working capital. Such transactions would be loans.

Doscher did advance $50,000 for working capital on the day of the first meeting, July 30, 1903, and a certificate for 3,000 shares, part of the purchase price, was issued to him and another for 500 shares for his advance of working capital.

Claus Doscher died July 6, 1910.

The executors of Doscher's estate made claims against the brewing company upon three items:

(1) Between April 25, 1904, and January 26, 1910, Doscher advanced to the company from time to time sums aggregating $500,262, and the company repaid him from time to time $390,262, leaving an unpaid balance of $110,000 June 7, 1910. This shows that what the company needed was temporary help and not any advance of working capital to remain permanently in the business. Consistently with this neither the 1,500 shares remaining in the treasury nor any part of them were transferred to him, and also consistently with this the company adopted the following resolution August 10, 1915, when all the Doschers resigned both as officers and directors:

"It was then moved, seconded and unanimously carried that the $150,000 capital stock of this corporation in the treasury, be either sold for cash or used to acquire property or franchises or for the purposes of acquiring trade in such manner and under such circumstances as shall seem for the best

interest of the company in the discretion of the president, and the president be and he is hereby authorized and empowered to use the same in accordance with the resolution.                    Charles Doscher, Secy."

Subsequently the company actually sold 29 of these shares. It seems that a quorum was not present at this meeting of the directors, but the resolution was ratified at a subsequent meeting, and whether ratified or not it shows the understanding of the parties on the subject. Upon this balance of $110,000 the company continued to pay interest at the rate of 6 per cent. per annum down to November 7, 1913.

(2) December 29, 1905, the company not having paid the mortgage for $200,000 on the property conveyed to it by Doscher in accordance with its agreement, Doscher advanced to it $200,000 to pay off this mortgage, and upon this advance the company paid interest at the rate of 6 per cent. per annum down to November 7, 1913. This was a capital investment by the company and the advance can in no sense be regarded as for working capital and the parties did not so treat it.

(3) October 14, 1910, the estate of Doscher advanced $68,850 for which the company gave its note upon which it regularly paid interest down to November 20, 1914.

January 23, 1917, an involuntary petition in bankruptcy was filed against the company and it was adjudicated a bankrupt March 5, 1917.

June 25, 1918, the executors of the estate of Claus Doscher filed proof of debt as follows:

(1) Money loaned by Claus Doscher on December 29, 1905.......$200,000.00
   Interest on the same from July 1, 1913 to August 1, 1915.....   25,000.00
(2) Money loaned by Claus Doscher, on open account, running from
   April 25, 1904, to June 7, 1910, the balance amounting to..... 110,000.00
   Interest on the same from July 1, 1913, to August 1, 1915......   13,750.00
(3) Money loaned by the estate of Claus Doscher on October 14,
   1910 ............................................   68,850.00
   Interest on the same from March 14, 1915, to August 1, 1915...    1,560.60
(4) A bond and mortgage upon real estate, located at Hamburg and
   Myrtle avenues, Brooklyn, New York........................   12,000.00
   Interest on the same from December 1, 1914, to August 1, 1915      400.00
                                                            _____
   Total ...............................................$431,560.60

The sum of $12,400 secured by mortgage must be deducted from this by virtue of an order of the court directing the trustees to convey the premises in satisfaction of the mortgage, leaving a balance of $419,-160.60.

Upon objection filed by the trustees the referee also deducted $150,-000 with interest which he held to have been not a loan but an advance by Doscher in performance of his agreement to subscribe for 1,500 shares of the capital stock remaining in the treasury, thereby reducing the claim to $175,253.09. He arrived at this conclusion, among other things, upon the theory that the original account with Doscher standing simply in the name of "Claus Doscher" was an account intended to show the history of Doscher's performance of his original agreement and that it had been changed by adding the words "Loan Account" for the purpose of changing his advances from contributions to working capital to loans. The change was made long before the advances in

question began so that there seems to be little ground for this explanation. Moreover, the account, whatever it be called, shows the foregoing controlling facts.

[2] The trustees petitioned for a review of the referee's report on the ground that the whole claim should have been expunged for fraud. This contention arises from the following facts: August 9, 1915, the reorganized Franklin Brewing Company executed a mortgage for $450,000 to the People's Trust Company to cover all its indebtedness to the estate of Claus Doscher represented by 450 coupon bonds of $1,000 each. These bonds were delivered to the executors who accepted the same in full settlement and distributed them among the six legatees under Claus Doscher's will. They also surrendered all the notes they had to the company except the one for $68,850 which was produced at the hearing before the referee and the accounts on the books were closed out and marked, "Paid."

March 31, 1917, the trustees filed a bill in the District Court for the Eastern District of New York against the trust company to have the mortgage declared void as a preference by an insolvent corporation under section 66 of the Stock Corporation Law of New York (Consol. Laws, c. 59), and it was so declared. Karasik v. People's Trust Co. (D. C.) 252 Fed. 324. Subsequently the bonds were also declared void under section 55 of the same law. Franklin Brewing Co. (D. C.) 254 Fed. 910.

As a result the trustees contended that there was an accord and satisfaction between the company and the executors which wiped out the whole indebtedness and the securities received having been declared void their claim should have been expunged. The referee overruled this objection.

The District Judge confirmed the report of the referee and the claimants only appeal.

The District Judge very properly held that even if there had been an accord and satisfaction when the mortgage was executed and the bonds delivered the executors were thrown back to their original rights when the mortgage and bonds were declared void. Keppel v. Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790; Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. 332; In re Clark (C. C.) 176 Fed. 955; In re Louis J. Bergdoll Motor Co., 233 Fed. 410, 147 C. C. A. 346; State Bank v. Ingram, 237 Fed. 76, 150 C. C. A. 278.

The order is reversed and the court below directed to enter an order in accordance with this opinion.

ROGERS, Circuit Judge. I dissent. The acceptance by the board of directors of the offer of Claus Doscher in June, 1903, resulted in a sale of the stock from which he could not be released by the subsequent action of the directors or stockholders or both, the corporation being at the time insolvent. The rights of the creditors could not be prejudiced by any such action. Neither could the rights of creditors be impaired by the transparent attempt of Claus Doscher in his method of transacting the business of the corporation and his system of bookkeep-

ing to evade the obligation which rested upon him by virtue of his original obligation. The fact that the stock was left in the treasury and not issued to Claus Doscher is quite immaterial. It did not prejudice his rights nor relieve him of his obligations.