## AMERICAN EXCH. BANK OF MILWAUKEE, WIS., v. GOETZ.

## In re PROGRESSIVE METAL & REFINING COMPANY.

(Circuit Court of Appeals, Seventh Circuit. September 28, 1922.)

No. 3099.

1. **Bankruptcy ⊙⇒311(6)—Preferred creditor entitled to file claim upon equality with other creditors after having been compelled to surrender preference.**

   The court, in rendering judgment for the trustee in suit to recover preference, should not impose condition on defendant's right to file claim in bankruptcy, since, where the defendant is compelled to surrender preference, he is entitled to prove his claim and receive a dividend upon an equality with other creditors.

2. **Bankrupty ⊙⇒168—Trustee suing alleged preferred creditor to whom bankrupt had transferred warehouse receipts as collateral security entitled merely to return of property.**

   Where maker of note transferred warehouse receipts to payee as collateral security and was subsequently adjudicated bankrupt, the trustee in bankruptcy in action against payee could not recover the value of the property on the ground of preferential transfer, but was entitled merely to the return of the goods so transferred.

3. **Trover and conversion ⊙⇒50—Measure of damages for conversion of note or account stated.**

   The measure of damages for the conversion of a note or an account is the actual value thereof at the time of conversion, and not the face value at that time.

4. **Pledges ⊙⇒30(5)—Pledgee of account who accepts less than face in settlement liable for value of account regardless of what he actually received.**

   Where maker of note assigned an account to payee as collateral security, the payee, if it accepted anything other than cash or less than the face in settlement and discharge of the account at the time of settlement, was liable for the value of the account, regardless of what it actually received.

5. **Bankruptcy ⊙⇒250(1)—Trustee required to repudiate or affirm transaction by bankrupt's pledgee within reasonable time after discovery.**

   Where maker of note assigned account to payee as collateral security, and payee in settlement thereof took back goods, the maker's trustee in bankruptcy on discovery of the transaction was required to repudiate or affirm it within a reasonable time.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Bill by Julius J. Goetz, trustee in bankruptcy of the Progressive Metal & Refining Company, bankrupt, against the American Exchange Bank of Milwaukee, Wis. Decree for plaintiff, and defendant appeals. Reversed, with directions.

The bill herein, filed March 29, 1921, charges that bankrupt, on June 19, 1920, was indebted in the sum of $11,500 to appellant on a demand note, and that on that date bankrupt, while insolvent, transferred to appellant goods, wares, and merchandise and assigned accounts receivable and choses in action

---

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the value of the face amount, and in payment of, said note; that appellant knew or had reasonable cause to believe that such payment would and did effect a preference in its favor; that bankrupt, upon an involuntary petition filed July 8, 1920, was, on the 21st of that month, adjudged a bankrupt, and appellee elected trustee. The prayer of the bill is that the transfer be set aside and declared null and void and that appellant be required to account to appellee for the value of the property transferred, and interest from date of transfer.

Appellant's answer admits the indebtedness as alleged, the transfer of warehouse receipts and accounts to appellant, and the collection of one of the accounts amounting to $757.74, and avers that whatever was taken was received as collateral security, and that appellant still holds the warehouse receipts, denies insolvency of bankrupt, and denies it knew or had reason to believe that when it took the collateral bankrupt was insolvent.

On March 21, 1921, nine months after the transaction complained of, attorneys for appellee wrote appellant the following demand:

"The latter part of June, 1920, the Progressive Metal & Refining Company delivered storage warehouse receipts to you, and also assigned certain accounts receivable in payment of its debt to you, and the value of the merchandise covered by the warehouse receipts and the amounts of the assigned accounts approximate $11,500.

"You are hereby notified that the trustee of the Progressive Metal & Refining Company has elected to avoid such transaction as a preference and demands that you pay to him the value of the merchandise and the amounts of money collected upon the accounts receivable. * * *"

On March 31st, appellant's attorney replied as follows:

"Your letter of March 21, 1921, addressed to the American Exchange Bank has been referred to me for reply.

"I note your advice that the trustee of the Progressive Metal & Refining Co. makes demand upon the bank for certain merchandise and money referred to in your letter.

"The American Exchange Bank still holds possession of the storage warehouse receipts covering certain metal, which warehouse receipts were pledged to the bank as collateral to secure an indebtedness of the Progressive Metal & Refining Company. The merchandise represented by these warehouse receipts remains in storage where it has been at all times since the warehouse receipts were delivered to the bank.

"The bank, as pledgee of the warehouse receipts and of certain assigned accounts, denies that any preference was created by such pledge and assignment, and refuses to comply with the demand of the trustee."

The court found in favor of appellee for $11,500 and interest from March 20, 1921, and costs. Appellant was given the right to file its claim in bankruptcy within 20 days, if it first paid the judgment awarded.

The undisputed facts show that some time in the latter part of June, 1920, the bankrupt, being indebted to appellant on a demand note in the sum of $11,500, gave to appellant, as collateral security to, but not in payment of, said note, the following: Warehouse receipt for 1,657 brass ingots, estimated weight 40,216 pounds, with a valuation of 20 cents per pound, or $8,043.20, at which sum it was accepted as collateral; another warehouse receipt for 7,169 pounds brass ingots, valued at 20 cents per pound, or $1,433.80; an assignment of a claim for $757.74 against the Magnus Company; and another claim against the Maluminum Castings Company for $1,201.64.

The warehouse receipts, at the time of the trial, were still held by appellant, who had no collateral note or other written authority to dispose of them.

The $757.54 account was collected on a date not shown. The other account was disputed, and finally the brass out of the sale of which the account arose was shipped to appellant by the Castings Company. Just what the dispute about that brass was does not appear, nor, beyond the fact that appellant's attorney ordered the brass back, does it appear what, if any, settlement was made. This brass was warehoused by appellant on April 22, 1921, nearly a month after the commencement of the suit, and, until disclosed on the trial on October 12, 1921, appellee had no notice of that transaction.

Edgar L. Wood, of Milwaukee, Wis., for appellant.
Reginald I. Kenney, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge (after stating the facts as above). There are three questions for consideration: (1) Did appellant know or have reason to believe that bankrupt was insolvent? (2) Had appellant the right to file its claim, freed from the condition imposed? (3) What is the proper basis of recovery?

1. We agree with the conclusion of the District Court upon the first question, but find no actual fraud is shown.

[1] 2. In Page v. Rogers, 211 U. S. 581, 29 Sup. Ct. 162, 53 L. Ed. 332, the court said:

"Now that this litigation has come to an end, and the defendant has been compelled to surrender the preference which he received, he is entitled to prove his claim and to receive a dividend on it upon an equality with other creditors. Keppel v. Tiffin Savings Bank, 197 U. S. 356."

We are of opinion that the above is a proper practice in equity, and that appellant should be permitted to file its claim and receive dividends as there indicated, freed from the imposed condition.

[2] 3. This is a suit in equity, brought, after a demand and nine months after the alleged preference, not for a return, but for the value, of the property which the bill alleges had been transferred in payment of appellant's debt of $11,500. Even after the answer, sustained by the uncontradicted evidence, disclosed that the property transferred was taken, not in payment, but as collateral, appellee persisted in his demand on the theory alleged in the bill. The question whether the transfer was as collateral to or in payment of the debt was material, because, if in payment, and the trustee was defeated, appellant could file no claim in bankruptcy. On the other hand, if taken as collateral and the trustee was defeated, appellant would have the right, after the exhaustion of its collateral, to have the remainder of its claim allowed. It was also material because, as the owner of property taken in payment, appellant could use or dispose of it at will. As collateral, with no collateral agreement or contract of sale, appellant had no greater right than to hold as collateral, or sell after due notice, except that it could have collected and applied money from the assigned accounts. Appellant always recognized the bankrupt's right to redeem, and there was no conversion, or attempted conversion, as against that right, because there was never any demand that would bring in question any such right, either before or by the bringing of the suit.

It is claimed, and, so far as the evidence shows, it is probably true, that there was a great depreciation in the value of brass between the time it was given as collateral and the time of the demand nine months afterwards. This is not a case where the property was taken in payment, or was taken and sold under some illegal pledge or agreement and applied to the pledgee's account. On the contrary, the main part of the collateral remains undisposed of, and may be returned in kind. It would be unconscionable and unjust to permit the trustee to stand by for nine months and make no demand, and when he did make one

to make it and prosecute his suit upon an erroneous theory. It would likewise be inequitable and unjust to charge appellant with any depreciation in the value of the brass, which appears to have taken place long before any demand and during a time when appellant had no right to sell the brass.

We are of opinion that the bill should be amended so as to make its allegations conform to the proofs, and that under the authority of Off v. Hakes, 142 Fed. 364, 73 C. C. A. 464, a decree should be entered directing a return of the brass transferred as collateral by the bankrupt. Payment of the amount of $757.74, collected on the small account, together with the legal rate of interest from the time of its collection, should also be decreed.

[3-5] The account of $1,201.64 must be further considered. There is no evidence as to the value of that account. The measure of damages for the wrongful conversion of a note or an account is the actual value of the note or account at the time of its conversion, and not its face value at that time. 38 Cyc. 2097; Turner v. Retter, 58 Ill. 264; Griggs v. Day, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704; Logan County Bk. v. Townsend, 139 U. S. 67, 77, 11 Sup. Ct. 496, 35 L. Ed. 107. It appears that, after the commencement of this suit, an arrangement was made whereby the brass out of the sale of which that account arose had been shipped back and placed on warehouse receipt in the name of appellant, but the record is silent on all of the following matters, viz.: The date when the account fell due, the value of the account, the solvency of the purchaser when the account became due, whether there was any release by agreement of the parties or by operation of law upon the return of the brass; and as to any fact or matter surrounding the return of the brass. Proceeding upon his theory that the transfers were taken in payment, appellee remained silent when he learned of the return of the brass, and neither affirmed nor repudiated the transaction. When appellant undertook to deal with the account, it was its duty to use diligence to collect it. If anything other than cash or less than the face was taken in settlement and discharge of the account, it would be liable for the value of the account at the time of settlement, regardless of what it actually received. It was the duty of the trustee to repudiate or affirm the transaction by which the brass was returned within a reasonable time after knowledge of it came to his notice. Evidence should be taken upon the question of the settlement, and if it appears that there was no discharge of the account upon the return of the brass, or that the return of the brass was not prejudicial to the rights of the trustee, and was of the value, when taken, equal to the then value of the account, and the transaction was not repudiated within a reasonable time by the trustee, then the court should decree a return of the brass to the trustee; otherwise the court should decree payment of the value of the account at the time it could have been collected, with interest.

The decree is reversed, with direction to proceed in harmony with this opinion, and with costs to appellant.