**BOYLSTON NAT. BANK OF BOSTON v. WAINHOUSE et al.**

**In re HARRIS.**

(Circuit Court of Appeals, First Circuit. August 17, 1926.)

No. 1950.

**1. Bankruptcy ⬤⟁328.**

Where offer of composition was pending, and alleged bankrupt had been examined, *held*, proof of claim was properly filed, though there had been no adjudication.

**2. Bankruptcy ⬤⟁316(1)—Notes made basis of claim against alleged bankrupt held not paid by new notes previously deposited in escrow, for delivery after being credited with amount realized on old notes.**

Where alleged bankrupt, whose notes were held by bank, executed new notes, which were placed in escrow with the understanding that they were to be delivered to bank only after maker had been credited with amount which it realized on old notes in bankruptcy proceeding and from certain collateral, *held*, such new notes did not constitute payment of the old, so as to warrant disallowance of claim thereon in bankruptcy proceedings.

**3. Bankruptcy ⬤⟁312.**

That bank creditor of alleged bankrupt sought to obtain preference in proposed composition *held* not to bar proof of its claim in bankruptcy after failure of composition offer.

Anderson, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Bankruptcy proceedings by David W. Wainhouse and others against Eugene B. Harris, alleged bankrupt. From an order disallowing the claim of the Boylston National Bank of Boston, it appeals. Order reversed, and cause remanded.

See, also, 297 F. 628.

Frederick Gilbert Bauer, of Boston, Mass. (Fowler, Bauer & Kenney, of Boston, Mass., on the brief), for appellant.

Maurice Palais, of Boston, Mass., for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This case brings up on appeal the order of the District Court of Massachusetts disallowing in toto the claim of the bank against the alleged bankrupt on certain promissory notes; the referee in bankruptcy having found that these notes were paid by new notes.

On March 21, 1923, an involuntary petition in bankruptcy was filed, in which Eugene B. Harris was alleged to be bankrupt. At that time the bank held the notes of Harris for the sum of about $50,000. At the hearing in the court below this amount had been reduced to $39,007.65, as found by the referee. That this amount was due upon the old notes is not in dispute, unless the old notes were paid by certain new notes hereinafter described.

On September 5, 1923, before there had been an adjudication upon the petition in bankruptcy, an agreement was entered into between Harris and the bank, through their attorneys, by which Harris deposited in escrow with the attorney for the bank, five notes, of an aggregate amount of $30,000, which was the amount of Harris' debt to the bank over and above the amount which the bank could legally recover from the property which it had under attachment and from collateral remaining in its hands.

By the terms of the agreement by which these new notes were deposited in escrow, the bank was to retain the old notes only for the purpose of obtaining judgment entered in the action, which it had brought and which was pending in the superior court of Massachusetts, and also for the purpose of

proving in bankruptcy, in case there should be an adjudication.

As soon as judgment should have been entered in the law action, and the bankruptcy proceedings finally disposed of, the old notes were to be returned to Harris, and the new notes, for the full amount then remaining due, after crediting Harris with the amount realized on collateral held by the bank and from the sale of the property which had been attached by it, were to be delivered by the attorney who held them to the bank.

Upon receipt of the new notes, the attorney who received them indorsed upon an envelope in which they were inclosed the following:

"These are held by me in escrow, until such time as Harris shall make satisfactory arrangements with his other creditors, so that he can come back and go to work."

On June 7, 1923, the petitioning creditors filed a motion to amend their petition by inserting therein an additional act of bankruptcy. This was opposed by the bank, and the petition to amend was denied by the District Court.

Upon petition to revise this order of the District Court, this court reversed its order and remanded the case. In re Harris (C. C. A.) 299 F. 395, 39 A. L. R. 252. The opinion of this court was announced upon June 10, 1924. Certiorari was denied by the Supreme Court in 266 U. S. 616, 45 S. Ct. 96, 69 L. Ed. 469.

A hearing upon the question of adjudication was suspended by reason of the petition to file an amendment; but, after this petition was disposed of, the alleged bankrupt filed an offer of composition. The offer of composition was referred to the referee in bankruptcy on April 21, 1925, and a meeting to consider it was called for May 26, 1925.

An examination of the bankrupt was had before the referee in bankruptcy on May 28, 1925. On May 26, 1925, the bank filed a proof of its claim for the balance of the indebtedness due to it on the old notes. At the examination of the bankrupt before the referee, the agreement between the bank and the bankrupt was disclosed.

On June 15, 1925, there was a hearing before the referee on the allowance of the bank's claim.

On June 26, 1925, petitioner's creditors filed formal objections to the allowance of the bank's claim.

On July 9, 1925, its claim was disallowed by the referee, the referee holding that the delivery of new notes to the bank, to be held in escrow, constituted payment of the old notes, and the District Court has affirmed this order, stating in its memorandum of decision, "that the old notes can no longer be used by the bank as a basis of proof, since they were extinguished by the agreement." This is assigned as error, and also the refusal of the referee to allow the petitioner to surrender the new notes and to prove its claim.

[1] When the bank filed its proof of claim, the offer for composition was then pending, and, although there had been no adjudication, it was properly filed, as there had been an examination of the bankrupt.

On July 29, 1925, the referee filed his report on the composition proceedings, holding that the alleged bankrupt had failed to complete his composition offer, and recommending that adjudication take place forthwith. The refusal of the referee to allow the proof of the bank's claim, based upon its old notes, was placed by him, as well as by the District Court, upon the ground that the old notes had been paid by the new notes.

[2] From a careful examination of the agreement of September 5, 1923, which is made a part of the record, and under which the new notes were deposited in escrow, as well as of the testimony of the bankrupt and his attorney and the attorney for the bank, we can reach no other conclusion but that the new notes were deposited in escrow, to be delivered to the bank upon completion of the terms of the agreement, and that, as these terms were never complied with and the notes never delivered to the bank by its attorney, who held them in escrow, they did not operate as a payment of the old notes.

[3] The referee in his report also suggests that "there should be some penalty imposed upon a creditor who strives to overreach the others, and that penalty should not be avoided by the creditor's offer to surrender when caught," which seems to have had some weight with the District Court, as appears in the memorandum of decision which was filed.

There is no evidence that the old notes upon which the bank based its claim were tainted with fraud in any way, and, even if the bank had sought to obtain a preference, its proof of claim, after it had offered to surrender the new notes, could not be disallowed.

In Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 S. Ct. 443, 49 L. Ed. 790, the court held that, even where a creditor of a bankrupt had received a voidable preference, and retained it until deprived thereof by the judgment of a court upon suit of the trustee, he could thereafter prove the debt upon which he had received a preference, and that the

court was without power to inflict a penalty upon the creditor for having attempted to obtain a preference, the court stating in its opinion, that the surrender of a preference "was intended simply to prevent a creditor from creating inequality in the distribution of the assets of the estate by retaining a preference, and at the same time collecting dividends from the estate by the proof of his claim against it, and consequently that, whenever the preference has been abandoned or yielded up, and thereby the danger of inequality has been prevented, such creditor is entitled to stand on an equal footing with other creditors and prove his claims."

In Page v. Rogers, 211 U. S. 575, 29 S. Ct. 159, 53 L. Ed. 332, this decision was affirmed. In that case the creditor had been compelled by litigation to surrender the preference which he had received, and the court said in its opinion:

"Now that this litigation has come to an end, and the defendant has been compelled to surrender the preference which he received, he is entitled to prove his claim, and to receive a dividend on it upon an equality with other creditors."

See, also, In re Franklin Brewing Co. (C. C. A.) 272 F. 828, 832; American Exchange Bank of Milwaukee, Wisconsin, v. Goetz (C. C. A.) 283 F. 900, 902; In re Southern Pharmaceutical Co. (D. C.) 286 F. 148, 152.

As we have reached the conclusion that the new notes were not received in payment of the old notes, and that the bankruptcy court had not the power to inflict a penalty upon the bankrupt for its attempt to obtain a preference, by disallowing its proof of claim upon the old notes, we find it unnecessary to consider the other errors assigned.

The order of the District Court is reversed, and the action is remanded to that court for further proceedings not inconsistent with this opinion; the appellant to recover costs in this court.

ANDERSON, Circuit Judge (dissenting). The appellant's seventh assignment of error is that the court below erred "in disallowing and rejecting your petitioner's claim at a time when there was no composition pending and no adjudication had taken place." The appellant thus asserts that the question presented is purely moot; the brief urges this point. Without this contention of the appellant itself, this case seems to me plainly to fall within the well-settled rule that a court will not decide moot questions. See Alejandrino v. Quezon (June 7, 1926), 46 S. Ct. 600, 70 L. Ed. ——, opinion by Chief Justice Taft; Pub-

lic Utility Commission v. Campania, 249 U. S. 425, 39 S. Ct. 332, 63 L. Ed. 687, and cases cited. So far is this doctrine carried that, even when it does not appear on the record that the case is moot, this may be shown by extrinsic evidence. Heitmuller v. Stokes, 256 U. S. 359, 362, 41 S. Ct. 522, 65 L. Ed. 990; Mills v. Green, 159 U. S. 651, 653, 16 S. Ct. 132, 40 L. Ed. 293. Such cases are dismissed, generally without costs to either party.

How an appellant that only admits, but claims that its appeal involves only a moot question, can be allowed to prevail (with costs against the appellees), I cannot understand. The composition is dead; there is no adjudication. The mandate, in the usual form, to the court below for further proceedings not inconsistent with the opinion, is left to operate in vacuo. There are no proceedings in the bankruptcy court involving appellant's right to have a claim allowed against Harris for composition, or against his estate in bankruptcy. There may never be such proceedings. Does the present decision require the bankruptcy court to allow the claim, if there be adjudication?

But, if we assume future adjudication, it is at least doubtful whether, at a meeting called to consider composition without adjudication, any court can deal with the validity of a disputed claim against a real bankrupt estate. The rights of creditors at a meeting called to consider composition without adjudication are quite different from their rights after adjudication.

Composition is in essence a trade between the debtor and his creditors. Cf. Nassau Smelting, etc., Co. v. Brightwood & Co., 265 U. S. 269, 44 S. Ct. 506, 68 L. Ed. 1013; Id. (C. C. A.) 286 F. 72; In re Lane (D. C.) 125 F. 772; Cumberland Glass Co. v. De Witt, 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042.

At a meeting called to consider such proposed trade, scheduled creditors may prove in order to vote; failing to prove, they get the full benefit of the offer, if accepted by the requisite number. Nassau Co. v. Brightwood & Co. (C. C. A.) 286 F. 76; In re Harvey (D. C.) 144 F. 901; In re Atlantic Construction Co. (D. C.) 228 F. 571.

If content with the offer in composition, creditors may safely ignore the meeting. They examine the debtor, so as to know how to vote. They contest claims, lest an undesired trade be forced upon them by claimants having no legal voting rights. But composition is not, as is straight bankruptcy, a competitive struggle for the largest available share of an estate belonging in its entirety to the prevailing competitors. But, after adju-

dication, the interest of every creditor is adverse to that of every other creditor. They contest for a right in a bankrupt's estate, not for a right to vote on a composition; they must seasonably prove, or forego sharing in the estate.

In practice, claims allowed in composition proceedings without adjudication (abandoned or unconfirmed) are, in the absence of petitions to re-examine, treated as valid in subsequent real bankruptcy. But the rights of creditors, and of a trustee representing all creditors, are substantially different, after adjudication, from those obtaining in composition before adjudication. The trustee presents appeals from the allowance of claims. Foreman v. Burleigh, 109 F. 313, 48 C. C. A. 376; Chatfield v. O'Dwyer, 101 F. 797, 42 C. C. A. 30; 8 Remington on Bankruptcy (3d Ed.) § 3634; Gen. Orders in Bankruptcy XXI, par. 6, providing for re-examination of any claim filed against the bankrupt's estate; 2 Remington, §§ 1036, 1037. There are other differences which need not now be detailed.

Moreover, on the facts shown in the record, this is peculiarly a case in which the referee should require the strictest examination of the basis and validity of the claim of this appellant. The record fully justified the referee's finding that this appellant "has tried hard to gain advantage over other creditors of this estate. It has vigorously urged the acceptance of a composition by which other creditors will receive a percentage on their claims, while it (the bank) holds Harris' promise of payment in full." It obtained this agreement for full payment when Harris was out of the jurisdiction, by preying on his fear of criminal prosecution. It kept the agreement secret, until it was exposed at an examination of the bankrupt in the composition proceedings promoted by the appellant. Its sworn proof of claim was false, and the matter should be referred to the United States attorney for appropriate action under section 29b (3) of the act (Comp. St. Ann. § 9613). The appellant's scheme was to perpetuate a fraud upon the act and upon other creditors, intended to be specifically guarded against by the forty-first General Order in Bankruptcy, promulgated by the Supreme Court April 13, 1925 (267 U. S. 614), as follows:

"XLI. *Waiver of Right to Share in Composition Deposits. Before confirming a composition the judge of the court* shall require all creditors and other persons who may have waived their right to share in the distribution of the deposit made by the bankrupt, for claims, fees, or otherwise, to set forth in writing and under oath all agreements with respect thereto with the bankrupt, his attorney, or any other person, and *shall also require an affidavit by the bankrupt that he has not directly or indirectly paid or promised any consideration to any attorney, trustee, receiver, creditor, or other person in connection with the composition proceedings, except as set forth in such affidavit or the offer of composition, and that he has no knowledge of any such payment or promise by any other party.*" (Italics supplied.)

It is significant that, after more than a quarter of a century's experience with the Bankruptcy Act, the Supreme Court has found it desirable to require such fraud on the act to be negatived, of record, as a condition precedent to the confirmation of a composition offer.

This General Order XLI also shows that Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664, is not to be construed as overruling or modifying the long-established principle that secret arrangements for advantage or preference of one creditor over the others are fraudulent. An *open* agreement for full payment, perhaps as a basis for credit for the funds in composition (227 U. S. 632, 33 S. Ct. 365), is all that was held good in Zavelo v. Reeves. In some quarters, this decision seems to have been misunderstood. But see In re Hawks, (D. C.) 204 F. 309; Crowder v. Allen-West Commission Co., 213 F. 177, 129 C. C. A. 521.

It seems to me to follow that when, on May 28, 1925, the facts relative to this attempted fraud by this appellant came before the referee, the referee's sound course would have been to suspend all action as to proof of claims, report against the validity of the composition offer, thus remitting all parties in interest to their rights in regular bankruptcy, and that the District Court should have dismissed the case as moot. No countenance should be given by this or any other court to such schemes of fraud on the act and upon other creditors as the appellant in this case was engaged in.

I concur with the majority in the view that the court may not inflict penalties not authorized by the act. Undoubtedly the majority opinion in Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 S. Ct. 443, 49 L. Ed. 790, is, notwithstanding the powerful dissenting opinion of Mr. Justice Day, concurred in by three other justices, the rule binding upon us. But, on this record, it is not certain that, if the merits were properly before us, on a record entirely clear, the rule in the Keppel Case

would be applicable. Apparently both the referee and the court below found that the new notes and the agreement for payment in full had, as a matter of fact, been received as full payment of the old notes by a present delivery to the bank's attorney—that the alleged escrow was nothing but a cover. The record is not as explicit as might be desired; but it is far from clear that that decision was wrong.

At any rate, the whole problem of the conflicting rights of this bank and of other creditors should, if there be adjudication, be left for critical future examination—the referee probably exercising his power of suspending action on a disputed claim, and appointing, if necessary, a trustee to take appropriate action to protect the rights of all creditors and to deal with the false proof of claim.

I think the appeal should be dismissed without prejudice; but, as the proceedings in both courts were due to the appellant's pressing a question which it now admits was moot, costs should be allowed against the bank. Heitmuller v. Stokes, supra; United States v. Hamburg-American Co., 239 U. S. 466, 476, 39 S. Ct. 212, 60 L. Ed. 387.