In the Matter of **GIBRALTOR AMUSE-MENTS LTD., Bankrupt.**

**National Bank of Westchester, White Plains, Appellant,**

**The Wurlitzer Company, Wurlitzer Acceptance Corporation and M. Hallsted Christ, Appellees.**

**No. 210, Docket 27820.**

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1963.

Decided March 15, 1963.

William V. Cuddy, White Plains, N. Y. (Close, Griffiths, McCarthy & Gaynor, White Plains, N. Y., on the brief), for appellant.

Edward R. Neaher, New York City (Edward C. McLean, Jr., and Chadbourne, Parke, Whiteside & Wolff, New York City, on the brief), for appellees Wurlitzer Co. and Wurlitzer Acceptance Corp.

Joseph Jaspan, Brooklyn, N. Y., for M. Hallsted Christ, trustee in bankruptcy.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

National Bank of Westchester, White Plains, appeals from an order of the District Court for the Eastern District of New York, in bankruptcy, Walter Bruchhausen, Judge, reversing an order of Referee in Bankruptcy, Louis J. Castellano, which had granted the Bank's petition for leave to file an amended proof of claim. The opinion below is reported at 205 F.Supp. 685.

On March 18, 1960 the Wurlitzer Company filed an involuntary petition in bankruptcy against Gibraltor Amusements Ltd., three other creditors, William F. Wadsworth, Joseph Rae, and the Wurlitzer Acceptance Corporation, Wurlitzer's subsidiary, subsequently intervening as petitioning creditors on May 5 and 6, 1960. On March 21, 1960 Judge Zavatt appointed a receiver and issued the customary restraining order against all creditors. On March 31, 1960 the Bank sent the Receiver the following letter which was received on that date or shortly thereafter:

"March 31, 1960

"Halstead Christ, Esq.
Bleakley, Platt, Walker, Hart & Fritz, Esqs.
290 Old Country Road
Mineola, L. I., New York

"Re: Gibraltor Amusements Ltd.

"Dear Sir:

"Please be advised that National Bank of Westchester, White Plains is a creditor of Gibraltor Amusements Ltd. by virtue of a corporate guaranty duly executed on June 11, 1959 whereby Gibraltor guaranteed the payment of obligations of Sandy Moore Distributors Corp. and affiliated corporations up to $120,000.00. The present balance due and owing on the guaranteed indebtedness is approximately $91,000.00, plus interest. Gibraltor's obligation to National Bank of Westchester, White Plains is further evidenced by a statement and confession of judgment duly executed and delivered on June 11, 1959.

"We have been advised that you have been appointed receiver for Gibraltor by order of Hon. Joseph C. Zavatt dated March 21, 1960. You are hereby notified that National Bank of Westchester, White Plains objects to any distribution or transfer of any assets of Gibraltor to any creditor or other party, and to any temporary or permanent plan of operation of Gibraltor's business, unless such actions are consented to in writing by the Bank or unless such actions are expressly authorized by a valid order on notice issued by a court of competent jurisdiction.

"Very truly yours,
NATIONAL BANK OF WESTCHESTER, WHITE PLAINS
By: MARTIN D. RYAN
Senior Vice President"

On April 25, 1960 the Bank entered a judgment against the bankrupt in the office of the Clerk of Nassau County for $90,317.37, and the underlying claim was found by the Referee to constitute a debt, demand or claim provable in bankruptcy on the date of the filing of the petition. The adjudication of bankruptcy was made on August 19, 1960 and at the first meeting of creditors on September 7, 1960 the Receiver was duly elected Trustee, at which time he continued to have in his possession the letter from the Bank quoted above. The Statement of Affairs of the bankrupt, dated September 1 and filed September 7, 1960 listed the Bank as an unsecured creditor in the amount of $90,317.37, and the answer to the involuntary petition also listed the Bank as a creditor. Moreover, a copy of the judgment was later received into evidence during the course of the bankruptcy proceedings and prior to the time when the Bank moved for leave to file an amended claim on February 1, 1962.

In opposition to the motion the Wurlitzer companies and the Trustee, appellees here, claimed there was no power to grant the relief requested, as Section 57, sub. n of the Bankruptcy Act, 11 U.S.C. § 93, sub. n provides that claims "which

are not filed within six months after the first date set for the first meeting of creditors shall not be allowed." These opposing creditors advanced a miscellany of other contentions. Thus, *inter alia,* they argued that there was a wilful and deliberate failure on the part of the Bank to file the claim within the time allowed and that considerations of equity and good conscience militated strongly against granting the petition for leave to file an amended claim. The Bank insisted it had never entertained any intention to abandon its claim, that the failure to file the customary formal claim was "merely an inadvertence," and that the equities of the situation supported its petition for relief so strongly as to make it apparent that a denial of the petition would deprive it of any participation in the assets of the bankrupt and constitute a grave miscarriage of justice.

The Referee, we think properly, brushed aside the miscellaneous contentions of the appellees, apparently as having no substance and demonstrating no prejudice to appellees, and he held the retaining of the letter in his possession by the Receiver after he became Trustee was the equivalent of an informal filing with the Trustee, and there was thus a sufficient filing within the statutory six months' period. Judge Bruchhausen made no mention of the miscellaneous contentions, but he reversed the Referee's order on the ground that the six months' period is "mandatory and immutable," and that as the only filing was prior to the commencement of this period it furnished no basis for an amended claim. We think this was error and we reverse and reinstate the ruling of the Referee.

**I**

It has long been the law that the bankruptcy court possesses the power to allow the amendment of a defectively filed proof of claim, even after the expiration of the time designated by the statute for the filing of claims. Hutchinson v. Otis, 1903, 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179. Such power existed only if the defectively filed proof of claim was "sufficient" to constitute a basis for amendment, but the cases evidenced a liberal approach to what would be "sufficient," and the principal limitation was that a new cause of action could not be alleged in the amended proof of claim. In re Lipman, 2 Cir., 1933, 65 F.2d 366; In re G. L. Miller & Co., 2 Cir., 1930, 45 F.2d 115.[1] Moreover, while Section 57, sub. c of the Bankruptcy Act, 11 U.S.C. § 93, sub. c provides that claims be filed in the bankruptcy court or with the Referee, this requirement is deemed complied with by filing with the Trustee. J. B. Orcutt Co. v. Green, 1907, 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390; see General Order in Bankruptcy 21(1), 11 U.S. C. foll. § 53.

Here it is said that filing with the Receiver is not filing with the Trustee, that filing, prior to the commencement of the six months' period on the date of the first meeting of creditors, is just as fatally defective as is a filing after the six months' period has expired, and that there is consequently nothing to amend. The difficulty with this position is that the letter filed with the Receiver prior to the commencement of the six months' period remained in his possession when he became Trustee and for the full six months' period thereafter. Consequently, there was something to amend.

---

1. Appellees' reading of the cases in this Circuit as establishing a "strict" construction is wholly erroneous. In re Silk, 2 Cir., 1932, 55 F.2d 917, merely held that where there was no fraud by the bankrupt, an amended claim could not be filed after the six months' period had run simply because the petitioning creditor, who had not bothered to file a claim during the statutory period, could not be charged with negligence in failing to anticipate newly discovered assets. In re Killanna Realty & Const. Co., 2 Cir., 1934, 68 F.2d 718, held that where a creditor had not asserted any written claim in any form during the statutory period, the mere listing of the claim by the bankrupt in its schedules was not sufficient to constitute a basis for amendment.

This was precisely what we held in In re Kessler, 2 Cir., 1910, 184 Fed. 51, where the filing of an amended claim was allowed.[2]

Appellees attempt to distinguish Kessler on the ground that "the receiver-trustee had apparently indicated to the creditor involved that the claim was proper, a fact which may have affected the decision." That the Kessler case cannot be distinguished on this ground, however, is sufficiently indicated by our decision in In re High Point Seating Co., 2 Cir., 1950, 181 F.2d 747, 750, where in discussing Kessler we stated:

"We cannot see that the statement the receiver was said to have made to the claimant that the defectively presented claim was 'all right' can distinguish the situation from the one before us, for the receiver had no authority to dispense with the statutory requirements for proof of claims."

The appellees also contend that the amendment to Section 57 of the Bankruptcy Act, 11 U.S.C. § 93 by the Chandler Act of June 22, 1938, by imposing stricter formal requirements for the filing of proofs of claim in the first instance, has so restricted the power of the bankruptcy court to allow amendments to an informally filed proof of claim, that early cases such as Kessler and In re Lipman, supra, evidencing a liberal approach as to what is sufficient to constitute a basis for amendment cannot be considered controlling on this appeal. Support for this position may indeed be found in some cases, such as In re Supernit, Inc., 3 Cir., 1950, 186 F.2d 130; but this position has been clearly repudiated by other authorities. In re Pacific Lumber & Fuel Co., 7 Cir., 1952, 194 F.2d 995; 3 Collier, On Bankruptcy, Section 57.11[3], page 186, n. 25 (14th ed. 1961). Our own Circuit, in Avidon v. Halpert, 2 Cir., 1944, 145 F.2d 884, in affirming

sub nom. the district court's decision in In re Strikalite, Ltd., S.D.N.Y., 1944, 54 F.Supp. 419, significantly omitted to decide the correctness of the dictum of the lower court adopting this restrictive approach. And, in Public Operating Corp. v. Schneider, 2 Cir., 1944, 145 F.2d 830, affirming sub nom. In re Weco Equipment, Inc., E.D.N.Y., 1944, 55 F.Supp. 532, this Court affirmed the lower court's decision "on authority of In re Lipman, 2 Cir., 65 F.2d 366." Lipman and Kessler were also cited with approval by this Court in In re High Point Seating Co., 2 Cir., 1950, 181 F.2d 747, 750, and Conway v. Union Bank of Switzerland, 2 Cir., 1953, 204 F.2d 603, 606, n. 4, petition for writ of certiorari dismissed per stipulation, Silesion Holding Co. v. Union Bank of Switzerland, 1956, 350 U.S. 978, 76 S. Ct. 454, 100 L.Ed. 848. In the latter case, Judge Learned Hand summed up the present state of the law as follows:

"Every since Hutchinson v. Otis, Wilcox & Co., 1903, 190 U.S. 552, 555, 23 S.Ct. 778, 47 L.Ed. 1179 it has been a common-place in bankruptcy that a claim may be amended to conform to the required formalities, provided the 'cause of action' is the same, and this Circuit has been especially liberal in applying the doctrine." (Omitting footnotes.)

Finally, appellees contend that even if the informal claim was filed in time and with the proper officer, there is no sufficient basis for amendment in the record since the March 31, 1960 letter, sent prior to the adjudication of bankruptcy on August 19, 1960, and hence prior to the existence of any bankrupt estate, looked to a receivership proceeding and not to a bankruptcy, and therefore did not evidence an intention to share in the bankrupt estate. It is not disputed that this signed letter, setting forth in detail the nature and amount of

---

2. Cf. In re Oscillation Therapy Products, Inc., S.D.N.Y., 1951, 94 F.Supp. 779.
    Under the facts of this case it is not necessary for us to reach the question whether the mere filing with the Receiver prior to the first date set for the first creditors meeting, without more, would be sufficient compliance with Section 57 of the Act.

the claim was "sufficiently specific and full to enable the trustee and the creditors to make proper investigation as to its fairness and legality, without undue trouble or inconvenience." In re Hudson Porcelain Co., D.C.N.J., 1915, 225 Fed. 325, 327. Prime reliance, however, is placed upon In re Thompson, 3 Cir., 1915, 227 Fed. 981, 983, for the proposition that "whether formal or informal, a claim must show (as the word itself implies) that a demand is made against the estate, and must show the creditor's intention to hold the estate liable." But the mere fact that the letter was written previous to the adjudication of bankruptcy does not obviate such an intention. In re Kessler, supra. While the Bank did not become a petitioning creditor, in its letter of March 31, 1960, in addition to objecting to "any temporary or permanent plan of operation of Gibraltor's business," it expressly objected to "any distribution or transfer of any assets of Gibraltor to any creditor or other party" without the Bank's written consent or court order. During the ensuing months the Receiver retained the letter as Trustee and the validity and propriety of the Bank's claim was recognized not only by the bankrupt but by the Referee in determining who were the qualified creditors. Under these circumstances we think there was no basis whatever for any finding that the Bank did not intend to assert a claim against the bankrupt estate.

## II

To appreciate the thrust of the miscellaneous contentions of appellees it is necessary to give a brief chronological sketch of the course of events prior to the filing by the Bank of its petition for leave to file an amended claim. The Wurlitzer Company, as we have stated above, filed the involuntary petition and its subsidiary and two other creditors subsequently intervened. One of these intervenors, Joseph Rae, was found by the District Court to be unqualified. Other creditors including the Bank failed or refused to join as petitioning creditors and thus "cooperate" with Wurlitzer. The result was a prolonged and bitter struggle in the courts over questions relating to the number of creditors and particularly the status of the Wurlitzer subsidiary as a petitioning creditor. Wurlitzer finally won out, Judge Friendly dissenting in this Court, and the litigation came to an end when, on December 4, 1961, the Supreme Court denied certiorari. In re Gibraltor Amusements, Ltd., E.D.N.Y., 1960, 187 F.Supp. 931, affirmed, 2 Cir., 1961, 291 F.2d 22, cert. denied, 368 U.S. 925, 82 S.Ct. 360, 7 L.Ed. 2d 190.

It is quite apparent from the tenor of appellees' brief that the Bank's refusal or failure to "cooperate" with Wurlitzer left Wurlitzer and its counsel in a far from friendly attitude toward the Bank. This we think is the source from which emanate the rather extravagant, and we think quite baseless, charges against the Bank that were dredged up by way of opposition to the petition for leave to file an amended claim which was presented to the Referee on February 1, 1962.

If the Bank chose not to "cooperate" with the principal creditor of the bankrupt, we think it was clearly the right of the Bank to follow the course that seemed to it most likely to result in the largest payment toward the liquidation of its substantial claim of $90,317.37. We find no evidence whatever of any intention on the part of the Bank to abandon or surrender its claim; and every reasonable inference from the attendant circumstances and from the very text of the letter filed with the Receiver and retained by him as Trustee, is to the effect that the Bank had a just claim and intended to participate with the other creditors in receiving payments from the assets of the bankrupt, in partial or complete liquidation of the Bank's claim. The notion that the Bank deliberately withheld the filing of a formal claim until after the Supreme Court denied certiorari in the litigation above described seems to us to be quite unsupported. The Bank was considered by all concerned as a creditor, and the Bank's judgment had even been received in evidence in the bankruptcy proceedings. So

far as appears the Bank had done nothing at any time to impeach the validity of its claim. The status of the Bank would not have been altered in any way, nor can we perceive any advantage the Bank could gain, by a deliberate failure to file a formal claim. There is nothing to impugn the Bank's statement that the failure to file was nothing more than an "inadvertence."

■■ Of course we are aware that the bankruptcy court is a court of equity. See Pepper v. Litton, 1939, 308 U.S. 295, 303 et seq., 60 S.Ct. 238, 84 L.Ed. 281; S.E.C. v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293; Hauptman v. Director of Internal Service, 2 Cir., 1962, 309 F.2d 62, 64. But the most astonishing part of the whole case is the contention of appellees that the equities of the situation require a denial of the Bank's petition for leave to amend its claim. We think the equities are all the other way around. Concededly the assets of the bankrupt are substantial, and no distribution to creditors has yet been made. If appellees succeed on this appeal the Wurlitzer companies and other creditors will receive a windfall to which they are not entitled on the merits. If appellees fail, as we think they should, the Bank will receive no more than its fair and proper share *pari passu* with the other unsecured creditors. See In re Lipman, supra, 65 F.2d at 368.

■ Finally, appellees urge as an equitable consideration the Bank's entry of the state court judgment "despite the Bankruptcy Court's injunction against such action." The Bank's reference in its March 31, 1960 letter to Judge Zavatt's order of March 21, 1960 suggests that the Bank had actual notice of the injunction. But, despite its broad phraseology, there is at least some question whether the entry of the confessed judgment constituted a violation of the order. See 1 Collier, On Bankruptcy, § 2.61[3], pages 304–305 (14th ed. 1961). Moreover, assuming that in a proper case

the remedy of any person aggrieved by such violation would not be confined to a proceeding to punish for contempt (cf. Keppel v. Tiffin Savings Bank, 1905, 197 U.S. 356, 363, 25 S.Ct. 443, 49 L.Ed. 790; Boylston Nat. Bank v. Wainhouse, 1 Cir., 1926, 14 F.2d 385), there is absolutely no indication here that the Bank's action in any way interfered with or was prejudicial to the sound administration of the bankrupt estate. At any rate, the Transcript of the Hearing held before Referee Castellano on February 21, 1962 reveals that this phase of the case against the Bank is a mere afterthought presented by appellees for the first time on this appeal, and not raised in the forum in which was vested the prime responsibility for determination of the facts and the exercise of discretion. Stim v. Simon, 2 Cir., 1960, 284 F.2d 58, 60; In re Rosenberg, 2 Cir., 1944, 145 F.2d 896, 898; Sloan's Furriers, Inc. v. Bradley, 6 Cir., 1945, 146 F.2d 757, 759. See United States v. Goggin, 9 Cir., 1951, 187 F.2d 530; Briskin v. White, 9 Cir., 1961, 296 F.2d 132, 135.

Reversed with a direction to reinstate the decision of the Referee.

LUMBARD, Chief Judge (concurring).

I wish to emphasize the statement in footnote 2 of Judge MEDINA'S opinion. We need not decide and do not decide whether the mere filing with the receiver prior to the first date set for the first meeting of creditors, without more, would be sufficient compliance with § 57, sub. n of the Bankruptcy Act. What we do decide is that where the receiver and the trustee are one and the same person filing a claim with the receiver, under such circumstances as the majority opinion sets forth here, is tantamount to filing a claim with the trustee. The discussion of the effect of the Chandler Act on § 57 should not be construed to intimate that an amendment of a claim filed only with the receiver would be permitted in all cases.