In re Robert J. COLVIN, Debtor.

Bankruptcy No. 87–07908.

United States Bankruptcy Court,
E.D. Michigan, S.D.,
at Flint.

Feb. 7, 1991.

Gerald R. Gray, for debtor.

Carl L. Bekofske, Chapter 13 Trustee.

MEMORANDUM OPINION ON DEBTOR'S REQUEST FOR AN ORDER DIRECTING THE TRUSTEE TO RETURN TO THE DEBTOR EXCESS PLAN PAYMENTS RECEIVED

ARTHUR J. SPECTOR, Bankruptcy Judge.

Robert J. Colvin ("Debtor") seeks an order compelling the chapter 13 trustee to refund to him $5,609.31 which he says the

trustee unlawfully obtained from the Debtor's employer and paid to unsecured creditors.

The Debtor filed his voluntary petition for relief under chapter 13 of the Bankruptcy Code on May 5, 1987. His amended chapter 13 plan was filed and confirmed on September 30, 1987. The plan provided as follows: "The future earnings of the Debtor are submitted to the supervision and control of the Trustee and the Debtor's employer shall pay to the Trustee the sum of $149.49 of debtor's gross weekly pay." The parties agreed that this amount represented all of the Debtor's projected disposable income at the time the plan was confirmed. The only provision which made any reference to the duration of the plan stated as follows: "Over the course of 156 weeks, those unsecured creditors filing such claims shall be paid 42 percent of allowed amounts." The Debtor's weekly payment was enforced by a separate wage assignment order served on the Debtor's employer.

■ In March, 1990, the Debtor's employer, General Motors, paid a gross amount of $40,000 in return for the Debtor's voluntary termination of employment. The Debtor received a check from General Motors in a net amount which was over $6,000 less than he anticipated. He inquired of his employer regarding this discrepancy and learned that $6,757.02 was paid to the chapter 13 trustee per the trustee's request. Carl L. Bekofske, the standing chapter 13 trustee, acknowledged that on March 22, 1990, he received that sum from General Motors and disbursed the funds to creditors holding allowed (i.e., timely filed) unsecured claims, thereby paying them 100% of their claims. The Debtor filed an objection, arguing that the trustee acted improperly and that the Debtor had been harmed as a result.[1]

We have no trouble finding for the Debtor on the question of whether the trustee's action was improper. The Debtor's funding of the plan was explicitly and exclusively defined as payments of $149.49 per week from his wage earnings. This meant not only that the Debtor had the duty to pay that amount to the trustee each week, but the right not to pay more. Nonetheless, the trustee directed the employer to forward to him a sum which grossly exceeded the amount specified in the plan.[2] The trustee certainly could have moved under § 1329(a) for a modification of the plan if, in light of the large payment the Debtor was about to receive from his employer, the trustee believed that the weekly payment term was no longer just and that this termination payment constituted "a substantial change in the debtor's ability to pay since the confirmation hearing ... [which was not] taken into account at the time of confirmation." 5 *Collier on Bankruptcy*, ¶ 1329.01, at 1329–5 (15th ed. 1990). *See also In re Arnold*, 869 F.2d 240, 241 (6th Cir.1989); *In re Fitak*, 92 B.R. 243, 19 C.B.C.2d 1387 (Bankr.S.D.Ohio 1988). He instead chose to appropriate the money and disburse it to unsecured creditors without notice to the Debtor, and without abiding by other well-known procedural formalities. We wholly agree with the Debtor that such action was egregious and should not be permitted.

■ The more problematic issue before the Court is whether the Debtor was harmed by the trustee's unauthorized action. The Debtor claimed that he was harmed to the extent that the trustee's payments to unsecured creditors exceeded the 42% figure specified in the plan. The trustee responded that, notwithstanding the language in the plan indicating that unsecured creditors would be paid only 42% of their allowed claims, the plan was in essence a "100% plan." The question, then, is whether the plan required 100%

---

1. Because some payments under the plan were still owed to the trustee at the time he received the funds in question, the Debtor does not seek recovery of the entire sum paid to the trustee from the retirement distribution.

2. It is startling that the employer acceded to the trustee's request in the absence of a court order. The employer is fortunate that the Debtor did not bring legal or administrative proceedings against it instead of, or in addition to, the trustee.

payment on unsecured claims or only 42% payment. To decide this issue, the Court must determine at what point, or under what circumstances, the plan would be deemed completed. *See* 11 U.S.C. § 1328(a) (providing that a debtor is entitled to a discharge "after completion by the debtor of all payments under the plan").

The preprinted chapter 13 plan previously in widespread use contained no method for determining when the plan would be considered completed. As a result, it was often unclear when the debtor had fulfilled his obligations under the plan. If, for example, a debtor pledged to pay $100.00 per week for three years, was the plan completed when three years elapsed, even if the debtor missed some payments, or did completion require exact compliance—the payment of $15,600.00 ($100.00 × 156 weeks) within three years? If the plan instead provided that creditors would be paid 50% of their allowed unsecured claims, was it complete if this amount was paid out by the third month following confirmation? Or did such a plan continue for three years or until unsecured claims were paid in full, whichever came first? Which term controlled if the plan stated, as does this one, that the Debtor will pay a specified amount per week for three years AND that unsecured creditors will receive a specified percentage of their claims? The trustee should not be put into the position of speculating about such a fundamental aspect of the plan, especially if he is later held accountable for guessing wrong.

To address this problem, our Court adopted a local rule requiring debtors to specify the method for determining completion of a chapter 13 plan. Local Bankruptcy Rule 204 (E.D.M.), which became effective four days before the Debtor filed his petition for relief here, provided:

A plan shall contain, in addition to the requirements of 11 U.S.C. § 1322(a):

.        .        .        .        .

(e) a provision defining the nature of the plan as either being:

(1) a plan for the payment of a certain sum of money, over a specified period of time, or

(2) a plan providing creditors with payment of a specified percentage of their claims.[3]

Unfortunately, the Debtor's plan did not conform with the local rules in this respect, and the trustee properly inquired as to the nature of the plan at the confirmation hearing. In response, the Debtor's counsel stated that, due to the failure of several creditors to file a timely proof of claim, the plan's terms would allow sufficient funds to accumulate to enable the trustee to pay all allowed unsecured claims in full. This assessment was concurred in by the trustee and a creditor whose objection to confirmation was settled at the hearing. The Debtor therefore essentially conceded, and the Court concludes, that the plan would be deemed successfully completed only upon payment of 100% to allowed unsecured claims.

That being the case, the trustee's argument that he simply accelerated the plan's completion date has merit, and the Debtor would appear to be unharmed by the trustee's action. But the Debtor also argued that, had not the trustee unilaterally hastened completion of the plan, he would have filed a modified plan to reduce his obligation to unsecured creditors, based on his assertion that the loss of his job decreased his income and, because of lost health insurance benefits, increased his expenses.

■ To the extent the Debtor would have been successful in so modifying the plan, of course, he has indeed been harmed as a result of the trustee's action. However, in the present hypothetical context, the Court cannot determine with any degree of confidence whether such a modification would have been approved. We therefore invite the Debtor to submit a proposed modification of the plan, with notice pursuant to L.B.R. 13.11(b) (E.D.M.).

---

**3.** This rule was recently amended as part of a general revision and recodification of our local rules. L.B.R. 13.03(e) (E.D.M.) now requires that a plan include a "method by which the trustee can determine the point at which the plan is consummated."

If an objection to confirmation of the modified plan is timely filed, a hearing on the confirmation of the modified plan will then be conducted. If the Court does not grant a modification which fixes payments at some amount less than 100% of allowed unsecured claims, then the Debtor's objection may well be rendered moot. If such a modification is approved by the Court, on the other hand, the trustee will likely be obligated to reimburse the Debtor to the extent of any funds received by the trustee in excess of the amount authorized under the terms of the modified plan.[4] An appropriate order will enter.

---

4. Since the funds in question have already been paid to creditors, it is entirely possible that such reimbursement would come out of the trustee's own pocket.