**In re Constance I. DIETZ d/b/a Con–Co Ceramic Tile f/d/b/a Avon Tile & Marble, Debtor.**

**Bankruptcy No. 90–12399.**

United States Bankruptcy Court, E.D. Michigan, S.D., at Flint.

Jan. 10, 1992.

---

James L. Rowe, Flint, Mich., for debtor.

Andrew C. Pringle, Jr., Farmington Hills, Mich., for Beaver Distributors, Inc.

Carl L. Bekofske, Chapter 13 Trustee.

## MEMORANDUM OPINION ON MOTION TO ALLOW INFORMAL PROOF OF CLAIM AS TIMELY FILED

ARTHUR J. SPECTOR, Bankruptcy Judge.

### FACTS

In this case, a creditor with a nonpriority unsecured claim requests that I deem its late-filed proof of claim to be an amendment to its timely "informal" claim so that it may be paid on a par with those creditors who filed their proofs of claim within the time permitted by law. For the reasons which follow, I hold that the "informal proof of claim" doctrine provides some relief to this creditor.

On November 7, 1990, Beaver Distributors, Inc. commenced a lawsuit in state court against Constance I. Dietz, now the Debtor, seeking judgment in the amount of $22,074.27. Shortly thereafter, on December 3, 1990, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code, and scheduled Beaver as a creditor holding an unsecured claim for the amount mentioned. Both Beaver and the attorney representing it in the state-court action were listed on the mailing matrix filed with the Debtor's petition. On December 4, 1990, all parties listed on the matrix were served with a notice of the bankruptcy filing, which advised that the meeting of creditors required by 11 U.S.C. § 341 would be held on January 10, 1991, and that the last date for filing a proof of claim was April 10, 1991.

On January 21, 1991, eleven days after attending the creditors' meeting, Beaver's credit manager mailed a letter to the chapter 13 trustee in which she expressed misgivings about the Debtor's proposed plan. The letter also displayed Beaver's irritation "that [the Debtor] owed Beaver over $20,-000.00 yet was buying expensive jewelry." A copy of this letter was received by the bankruptcy court clerk on February 1, 1991. However, Beaver did not file a proof of claim, as such, until April 16, 1991, six days after the bar date established by F.R.Bankr.P. 3002(c). The Debtor's plan was confirmed on April 17, 1991.

On May 14, 1991, Beaver filed a motion in which it argued that its letter and/or other actions it took prior to the bar date constituted an "informal" proof of claim, the defects of which were cured by its "amending" proof of claim filed after the bar date. Because its informal claim was made prior to expiration of the bar date, Beaver urged the Court to allow its claim as timely filed.

The Debtor and the trustee opposed this motion, arguing that the facts of this case do not warrant application of the informal proof of claim doctrine, and stressing that the payment of Beaver's claim as though it were timely filed would be "prejudicial" to other creditors with unsecured claims. This assertion is undoubtedly correct from a strictly financial standpoint, inasmuch as the allowance of Beaver's claim as timely filed would reduce the dividend to creditors holding timely unsecured claims from 77% to approximately 38.6%, resulting in an aggregate loss to them of about $8,640. After a hearing, I now issue the following findings of fact and conclusions of law pursuant to F.R.Bankr.P. 7052.

### DISCUSSION

The trustee does not oppose the allowance, *per se*, of Beaver's claim. Indeed, there is no provision in the Bankruptcy Code which explicitly requires the "disallowance" of late claims. Section 502 of the Bankruptcy Code, which deals with allowance and disallowance of claims, does not specify that late-filing is a basis for disal-

lowance. And the rule stating that, with exceptions not relevant here, "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code," F.R.Bankr.P. 3002(c), does not provide for the disallowance of claims which are filed after the bar date.

The trustee instead argues that Beaver's claim should be treated as tardily filed, and thus paid only after "timely filed claims are paid *in full.*" Page 3 of Trustee's Response to Beaver's Brief (emphasis in original).[1] Since the Debtor does not take exception to the allowance of Beaver's claim under such terms, I do not believe that the issue here is whether Beaver's claim should be "disallowed" pursuant to § 502. Rather, the primary issue is whether Beaver's claim should be deemed to have been timely filed or if it should be subordinated as untimely.

■ A proof of claim is defined as "a written statement setting forth a creditor's claim," F.R.Bankr.P. 3001(a), and must "conform substantially to the appropriate official form." *Id.* I must therefore first determine whether Beaver's letter substantially complies with the official form.

A properly completed proof of claim is denominated as such and includes the following:

1. Name and address of creditor;
2. Basis for claim;
3. Date that the debt was incurred;
4. Classification of claim;
5. Amount of claim; and
6. Copies of any documents supporting the claim.

Official Form 10; *cf. In re Harper,* 138 B.R. 229 (Bankr.N.D.Ind.1991) (1991 Bankr. LEXIS 1291). Beaver's name and address are explicitly set forth in its letter, and the amount of the claim is stated, albeit imprecisely, as being "over $20,000.00." But the letter contains only a hint as to the basis and classification of the claim,[2] and there is no indication as to the date the debt was incurred. Moreover, the letter does not contain the heading "proof of claim," and there are no supporting documents attached to it. In light of these deficiencies, I conclude that the letter does not "conform substantially to" the official form.

■ Notwithstanding the "substantial conformity" requirement of Rule 3001(a), many courts have stated or implied that a document which does not substantially conform to the official form may, if certain minimal criteria are met, constitute an "informal" proof of claim. *See, e.g., In re Holm,* 931 F.2d 620, 622 (9th Cir.1991); *In*

---

1. The trustee does not explain why Beaver's claim, if late, must be subordinated in this fashion. Although such treatment of untimely unsecured claims is required by 11 U.S.C. § 726(a), that provision is relevant to chapter 13 only for purposes of determining, pursuant to 11 U.S.C. § 1325(a)(4), whether the value of the stream of payments to creditors holding unsecured claims under the chapter 13 plan is at least equal to the dividend such creditors would receive in a hypothetical chapter 7 proceeding. *See generally In re Hardy,* 755 F.2d 75 (6th Cir.1985); *cf. In re Kentucky Lumber Co.,* 860 F.2d 674, 676 (6th Cir.1988) ("Section 726 does not apply directly to Chapter 11 cases. It does, however, apply indirectly through the 'best interests of creditors test' found in section 1129(a)(7)."). And since the Debtor's plan would satisfy the "best interest of creditors" test regardless of whether Beaver's claim is paid as if timely filed, § 726(a) does not mandate subordination of Beaver's claim.

The trustee's argument may derive from the terms of the Debtor's plan, which allows only for the payment of "duly filed" unsecured claims. This qualifier arguably excludes claims filed after the bar date. *See Black's Law Dictionary* (5th ed. 1979) (Defining "duly" as "according to legal requirements."). In any event, Beaver did not challenge the contention that its claim must be fully subordinated if deemed late, so for purposes of this opinion I have assumed that the trustee's premise is correct.

2. The letterhead reveals that Beaver is a ceramic tile distributor, and the letter states that the Debtor "stopped paying on her account in March of 1990." A logical inference, then, is that the basis for Beaver's claim is goods sold by Beaver to the Debtor. In conjunction with the fact that the letter also expresses Beaver's interest in maximizing the amount that "could be disbursed to the unsecured creditors," one could also infer that Beaver held an unsecured nonpriority claim. But administration of the estate would hardly be facilitated if, as aptly stated by the trustee, he were required "to look for hidden meaning in all communications." Paragraph 4(C) of Trustee's Objection.

re Charter Co., 876 F.2d 861, 863 (11th Cir.1989); *Liakas v. Creditors' Committee of Deja Vu, Inc.,* 780 F.2d 176, 178 (1st Cir.1986); *Wilkens v. Simon Bros, Inc.,* 731 F.2d 462, 464–65 (7th Cir.1984); *In re Butterworth,* 50 B.R. 320, 322–23 (W.D.Mich.1984); *In re National Entertainment Centers, Inc.,* 103 B.R. 879, 881, 19 B.C.D. 1309, 21 C.B.C.2d 844 (Bankr. N.D.Ohio 1989); *In re Key,* 64 B.R. 786, 789 (Bankr.M.D.Tenn.1986); *In re McCoy Mgmt. Servs, Inc.,* 44 B.R. 215, 217, 12 B.C.D. 531 (Bankr.W.D.Ky.1984).[3] Under the appropriate circumstances, such a "claim" may then be amended after the filing deadline has passed to bring the document into compliance with Rule 3001(a). *Holm,* 931 F.2d at 622; *Wilkens,* 731 F.2d at 464.

The soundness of the informal proof of claim doctrine is suspect because it seemingly does an end-run around Rule 3001(a). And although the doctrine is designed to achieve substantial equity, it is a legitimate question whether that objective is served when the net result is to permit a creditor who has ignored the procedural requirements to share equally with those creditors who have taken the trouble to abide by them.

On the other hand, the concept of an informal proof of claim has been consistently endorsed and applied by the courts since at least 1903,[4] and there is nothing in the Code nor the Bankruptcy Rules which explicitly rejects it. Moreover, the seeming inequity resulting from application of the "equitable" informal proof of claim doctrine—i.e., the non-discrimination, for purposes of distribution, between conforming and non-conforming claims—can be mitigated in various ways.[5] I therefore accept that a document which falls short of F.R.Bankr.P. 3001(a)'s definition of a proof of claim may nonetheless constitute an informal proof of claim. The next issue, then, is whether Beaver's letter satisfies the criteria of an informal proof of claim.

In addressing what constitutes an informal proof of claim, a bankruptcy court in this circuit identified the following elements:

1). the proof of claim must be in writing;

2). the writing must contain a demand by the creditor on the debtor's estate;

3). the writing must express an intent to hold the debtor liable for the debt;

4). the proof of claim must be filed with the Bankruptcy Court; and

5). based on the facts of the case, it would be equitable to allow the amendment.

*McCoy Mgmt.,* 44 B.R. at 217. This five-part test has gained fairly widespread acceptance. *See, e.g., In re Davis,* 108 B.R. 95, 99–100, 22 C.B.C.2d 6 (Bankr.D.Md. 1989), *aff'd,* 936 F.2d 771 (4th Cir.1991); *In re Bowers,* 104 B.R. 362, 363–64 (Bankr. D.Colo.1989); *In re Loffland Bros. Co.,* 102 B.R. 79, 80–81 (Bankr.N.D.Tex.1988); *In re Scholz,* 57 B.R. 259, 261 (Bankr. N.D.Ohio 1986); *In re Fred Dent, Inc.,* 57 B.R. 219, 221 (Bankr.M.D.La.1986). But *McCoy Mgmt.'s* fifth element actually goes to the question of whether a creditor

---

3. Some courts even suggest that an informal proof of claim need not be reduced to writing. *See In re Davis,* 936 F.2d 771, 775–76 (4th Cir. 1991).

4. *See Hutchinson v. Otis,* 190 U.S. 552, 555, 23 S.Ct. 778, 779, 47 L.Ed. 1179 (1903); *see also, e.g., J.B. Orcutt Co. v. Green,* 204 U.S. 96, 27 S.Ct. 195, 51 L.Ed. 390 (1907); *Perry v. Certificate Holders of Thrift Savings,* 320 F.2d 584, 590 (9th Cir.1963); *In re Gibraltor Amusements, Ltd.,* 315 F.2d 210 (2d Cir.1963); *In re Pacific Lumber & Fuel Co.,* 194 F.2d 995, 996 (7th Cir.1952); *In re Lipman,* 65 F.2d 366, 368 (2d Cir.1933); *In re Patterson–MacDonald Shipbuilding Co.,* 293 F. 190 (9th Cir.1923); *In re Vega Baja Lumber Yard, Inc.,* 285 F.Supp. 143, 145 (D.P.R.1968).

5. *See, e.g.,* 8 *Collier on Bankruptcy,* ¶ 3001.03 (15th ed. 1991) ("A creditor may not rely on an informal claim to participate in the estate but rather must amend the informal proof to conform to the requirements of Rule 3001(a). Thus, a creditor may not complain about a failure to receive a distribution from the estate if no claim complying in form with Rule 3001 was filed...."); *In re Wilbert Winks Farm, Inc.,* 114 B.R. 95, 99 (Bankr.E.D.Pa.1990) (taxing the informal claimholder for the cost of redrafting the final order of distribution in a chapter 7 case).

should be allowed to amend an informal claim, rather than whether an informal claim has in fact been made. And since a document which "contain[s] a demand by the creditor on the debtor's estate" implies "an intent to hold the debtor liable for the debt" (and vice versa), I believe that *McCoy Mgmt.*'s second and third elements should be stated in the alternative.

█ Thus, the formulation could be restated as follows: A written document filed with the bankruptcy court which contains a demand on the estate or otherwise express-es an intent to hold the debtor liable for an alleged debt will serve as an informal proof of claim.[6] *Cf. Charter Co.*, 876 F.2d at 863 ("[T]he document must apprise the court of the existence, nature and amount of the claim (if ascertainable) and make clear the claimant's intention to hold the debtor liable for the claim."); *Holm*, 931 F.2d at 622 ("[The] document ... must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." (quoting *In re Anderson–Walker Indus., Inc.*, 798 F.2d 1285, 1287 (9th Cir.1986))).

█ Applying this test to the letter in question, it is of course a written document, and was received by the Court (although not filed). Whether the letter communicated Beaver's intention to pursue a claim against the Debtor and/or the estate is a closer call, but I believe that the pas-

sage expressing Beaver's "irritat[ion] that [the Debtor] owed Beaver over $20,000.00" logically implies both that the Debtor was (currently) indebted to Beaver and that Beaver intended to collect the debt. *Cf. In re Lipman*, 65 F.2d 366, 368 (2d Cir.1933) (Holding that a creditor's objection to a proposed composition, which alleged that the bankrupt had made false statements in connection with a loan request, constituted an amendable proof of claim, noting that "[i]t would be fanciful to suggest that the creditor objected for the sole purpose of preventing the discharge which accompanies confirmation of a composition, and with no intention of protecting his interest as a creditor in the bankrupt estate."); *see also Key*, 64 B.R. at 789 ("Intent [to hold the estate liable] may be implicit in the language of documents."). I therefore conclude that the letter constitutes an informal proof of claim.[7]

█ According to the view articulated in *Collier*, however,[8] a creditor's right to payment on an informal claim essentially remains inchoate until such time as the proof of claim is amended so as to bring it into conformity with F.R.Bankr.P. 3001(a). *Collier* characterized this view as "contrary to logic," 8 *Collier*, ¶ 3001.03 n. 54, but why this might be so is poorly explained.

The crux of *Collier*'s criticism appears to be its contention that a claim should not

---

**6.** Many of the decisions which cited *McCoy Mgmt.* imply that a document must satisfy each of the factors listed in that case in order to constitute an informal proof of claim. *See Davis*, 108 B.R. at 99; *Loffland*, 102 B.R. at 80; *Scholz*, 57 B.R. at 261; *Fred Dent, Inc.*, 57 B.R. at 221. But *McCoy Mgmt.* appears to have viewed the test as more in the nature of a "safe harbor," rather than a recitation of indispensable requirements for an informal proof of claim. 44 B.R. at 218. Consistent with *McCoy Mgmt.*, the reconstituted form of the test that I propose is not intended to establish minimal standards for purposes of determining whether an informal proof of claim has been made.

**7.** Because I so hold, there is no need to address Beaver's argument that its pre-petition state court complaint and its participation in the creditors' meeting, separately or in conjunction with the letter to the trustee, gave rise to an informal proof of claim. I note again, however,

that some courts do not require an informal claim to be in writing. *See supra* n. 3. On the other hand, the only cases cited by Beaver supporting the proposition that its state-court action amounted to an informal claim are distinguishable because they involved either a lawsuit that was commenced post-petition, *In re Sambo's Restaurants, Inc.*, 754 F.2d 811 (9th Cir. 1985), or a pre-petition lawsuit that was subsequently removed to the bankruptcy court, *In re Marshland Development, Inc.*, 129 B.R. 626, 21 B.C.D. 1482, 25 C.B.C.2d 360 (Bankr.N.D.Cal. 1991). Moreover, at least two courts have explicitly rejected the contention that a pre-petition lawsuit may serve as an informal claim. *See In re Thomson McKinnon, Inc.*, 130 B.R. 721, 723 (Bankr.S.D.N.Y.1991); *In re FRG, Inc.*, 121 B.R. 710, 714, 21 B.C.D. 30 (Bankr.E.D.Pa. 1990).

**8.** *See supra* n. 5.

be considered amendable unless it "satisf[ies] the filing requirements of § 501 of the Code (and, by extension, Rule 3001)." *Id.* But if that premise is accepted, the upshot would be that a creditor could amend a claim to make it conform with Bankruptcy Rule 3001 only if the original claim conforms with that rule. Of course, the net result of such circuitous reasoning is the elimination of the informal proof of claim doctrine. *See McCoy Mgmt.,* 44 B.R. at 218 n. 13 ("[C]ourts have indicated that the 'substantial conformity' language of Rule 3001(a) need only be met by a proof of claim *as amended.* It is clear that if [this] language was strictly interpreted then no informal proof of claim would ever be allowed." (emphasis added)). In this respect, then, the criticism in *Collier* seems directed more toward the wisdom of the doctrine itself, rather than the "logic" of requiring a conforming amendment.

*Collier*'s criticism of the amendment requirement is misguided in another respect. It seems to be based on the premise that an unamended informal proof of claim is allowed unless a party objects to the claim pursuant to 11 U.S.C. § 502. *See 8 Collier on Bankruptcy,* ¶ 3001.03 n. 54 ("If the informal claim satisfies § 501 and Rule 3001, it is deemed allowed unless objected to. § 502(a)."). But this "premise" actually assumes the essential point in controversy—namely, whether the "automatic allowance" feature of § 502(a) applies with equal force to unamended informal claims. Apparently concluding that it does, it is not surprising that *Collier* should view the amendment requirement as illogical: after all, why require a claim to be amended if the original claim is deemed allowed? But *Collier* does not attempt to explain why § 502(a) necessarily encompasses unamended informal claims, nor do I see any justification for such a conclusion.

*Collier*'s criticism of the rule requiring amendment to informal claims is therefore not well-taken. To the contrary, the circumstances of this case illustrate the virtue of such a rule. If Beaver's unamended, informal proof of claim established the same right to payment as a formal one, any distributions to creditors with unsecured claims made to date by the trustee would be subject to challenge for failure to include Beaver's *pro rata* share. That being the case, the trustee could be obligated to recover a portion of those disbursements, *see In re Sturm,* 121 B.R. 443, 450, 24 C.B.C.2d 1350 (Bankr.E.D.Pa.1990), or perhaps face liability for violation of his fiduciary duty. *See Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 461 (6th Cir.1982); *In re Colvin,* 125 B.R. 182, 183 (Bankr. E.D.Mich.1991); *Sturm, supra.* Alternatively, the trustee may have to recompute future distributions to "make up" the omitted payments to Beaver. But in any event, it would be the trustee, rather than Beaver, who would suffer the consequences for the latter's failure to comply with Rule 3001.

On the other hand, a creditor's incentive to comply with Rule 3001 is obviously maximized if the right to receive payment on an informal claim is made contingent upon the filing of an amendment which in effect renders the informal proof of claim a formal one. Thus the requirement of a conforming amendment vindicates Rule 3001, and relieves the trustee of the obligation to search high and low for any inartfully drafted (or, worse yet, verbal) "claims." I therefore conclude that Beaver's informal proof of claim, by itself, did not entitle Beaver to share in any distributions made by the trustee. *See United States v. IN-SLAW, Inc.,* 113 B.R. 802 (D.D.C.1989), *rev'd on other grounds,* 932 F.2d 1467 (D.C.Cir.1991); *In re Davis,* 20 B.R. 519, 9 B.C.D. 113, 6 C.B.C.2d 1022 (Bankr. M.D.Ga.1982).[9]

---

9. The issue in *INSLAW* and *Davis* was whether the making of an informal proof of claim constituted a waiver of sovereign immunity. In each case, the court appears to have assumed that amendment to an informal claim is a prerequisite to receiving any distributions. *See IN-SLAW,* 113 B.R. at 812 ("The government points out that inasmuch as it has stated for the record

... that it does not intend to perfect its claim by filing a formal proof of claim, there is no possibility of the government participating unfairly in any distribution of INSLAW's estate."); *Davis,* 20 B.R. at 522 ("By such amendment [of Defendant's informal claim,] Defendant could share in any dividends that may be available for distribution.").

The next issue to be addressed, then, is whether the untimely proof of claim filed by Beaver on April 16, 1991, should be allowed as a document amending its informal claim so as to bring it into conformity with the requirements of Rule 3001(a). In *In re Meade Tool & Die Co.,* 164 F.2d 228 (6th Cir.1947), the Sixth Circuit stated that "[a]mendments of proofs of claims in bankruptcy to correct defects or mistakes are liberally allowed where, no fraud appearing, the mistake was made through ignorance of law or fact and substantial justice requires that the amendment should be allowed." 164 F.2d at 230. Since enactment of the Bankruptcy Code, the courts in this circuit have continued to adhere to this principle. *See, e.g., In re Milan Steel Fabricators, Inc.,* 113 B.R. 364, 368, 20 B.C.D. 774 (Bankr.N.D.Ohio 1990) (Snow, J.); *In re Oberlies,* 94 B.R. 916, 924 (Bankr.E.D.Mich.1988); *In re Pyramid Bldg. Co.,* 87 B.R. 38, 40 (Bankr.N.D.Ohio 1988) (O'Neill, J.); *In re Butcher,* 74 B.R. 211, 215, 16 B.C.D. 47 (Bankr.E.D.Tenn. 1987); *In re Midwest Teleproductions Co.,* 69 B.R. 675, 677 (Bankr.N.D.Ohio, 1987) (White, J.).

In most of these cases, the amending creditor was the Internal Revenue Service, and several courts referred to the following guidelines, first set forth in *In re Miss Glamour Coat Co.,* 80-2 U.S.T.C. 9737 (S.D.N.Y. Oct. 12, 1980), in determining whether to allow amendment:

(1) whether the debtor and creditors relied on the earlier proof of claim or had reason to know that subsequent proofs of claims would be filed pending completion of an audit;

(2) whether other creditors will receive a windfall by the courts [sic] refusing to allow amendment; [10]

(3) whether the Service intentionally or negligently delayed in filing its proof of claim;

(4) the justification for the Service's failure to request extension of the bar date; and

(5) whether equity requires consideration of any other factors.

*Pyramid Bldg. Co.,* 87 B.R. at 40; *see also Butcher,* 74 B.R. at 216; *Midwest Teleproductions,* 69 B.R. at 677.

With respect to the first factor, which apparently goes to the question of whether other parties reasonably relied to their detriment either on the originally filed claim or on the assumption that the universe of claims against the estate had been determined and fixed, there is no contention or indication that that is the case here.[11] And since other creditors with unsecured claims stand to receive more money than they could otherwise have expected to receive had Beaver timely filed its formal proof of

---

**10.** *Miss Glamour Coat* cited *In re Gibraltor Amusements, supra,* to illustrate this second factor. In that case, the court observed that

[i]f [the creditors opposing amendment] succeed on this appeal [such creditors] and other creditors will receive a windfall to which they are not entitled on the merits. If [such creditors] fail, as we think they should, the [amending creditor] will receive no more than its fair and proper share *pari passu* with the other unsecured creditors.

315 F.2d at 216. Thus the pejorative "windfall" presumably refers to any distribution received by creditors of the estate to which they would not have been entitled but for the failure of the amending creditor to timely file a proper claim. However, the assumption that such creditors have in fact received an *undeserved* benefit, as the conclusory term "windfall" implies, is certainly debatable. *See In re Metro Transportation Co.,* 117 B.R. 143, 150, 20 B.C.D. 1337 (Bankr.E.D.Pa.1990) ("Since the [amending creditor] failed to argue its right, if any, to

priority treatment [at the chapter 11 confirmation hearing], it cannot now be said that the other creditors would receive a windfall to which they are not entitled.").

**11.** It would of course be a different matter if the trustee were required to "undo" any of the distributions made prior to the filing of Beaver's amending claim. *Cf. In re Butterworth,* 50 B.R. 320, 322 (W.D.Mich.1984) ("The tardy creditor must show that ... an undue administrative burden [will not be] placed upon the bankruptcy court as would be the case where the amended claim was filed subsequent to final distribution of estate assets...."); *In re Overly-Hautz Co.,* 57 B.R. 932, 936–37, 14 C.B.C.2d 360 (Bankr.N.D.Ohio 1986), *aff'd,* 81 B.R. 434 (N.D.Ohio 1987) (Amendment not permitted based in part on the fact that the "Debtor relied on the claims [timely] filed, and based on this knowledge sold various assets including the Motor Base Division."). For the reasons discussed *infra* pp. 469–70, however, Beaver has no right to share in such distributions.

claim, the first and second factors cited above militate in Beaver's favor.

On the other hand, both Beaver and its state-court attorney were timely served with a clear, standard form, unambiguous notice of the deadline for filing a proof of claim.[12] Nor has Beaver shown any circumstances which mitigate its failure to file a proper and timely claim.[13] Thus, the third factor undermines Beaver's position. In this respect, however, I believe that the weakness lies not so much in the case for amendment as it does with the *Miss Glamour Coat* test itself.

In *Meade Tool & Die*, the untimely amendment at issue purported to change the status of a timely filed claim from unsecured to secured. The Sixth Circuit noted that an affidavit filed by the amending creditor indicated that the creditor had "limited ... ability to read and to understand the English language," and had relied on his attorney to timely file an appropriate claim. 164 F.2d at 230. The affidavit of the creditor's attorney stated that his failure to do so was "solely and alone by reason of his inability to read proof of claim through his blindness." *Id.* at n. 1.

But the court did not focus on whether these explanations were acceptable; the emphasis in *Meade Tool & Die* was instead placed on whether allowance of the amendment would prejudice other creditors. For example, the court noted that "no injury to any other creditors resulted from the voting of appellant in the election for a trustee, for the obvious reason that appellant voted for the losing candidate." 164 F.2d at 231. *See also id.* (Amendment is generally permissible "when all the parties can be placed in the same situation that they would have been in if the error had not occurred." (quoting *In re Myers*, 99 F. 691, 693 (D.Ind.1900))). And in addition to the language in *Meade Tool & Die* already

cited, *supra* p. 466, to the effect that amendments to claims are to be "liberally allowed," the court quoted favorably from other opinions which stress the judicial preference for allowing such amendments. *See* 164 F.2d at 230–31 ("A creditor who has security for his claim but has inadvertently filed proof of claim without mention of the security is generally allowed to amend so as to plead the security and thus preserve it." (quoting *In re Fiegel*, 22 F.Supp. 364, 365 (S.D.N.Y.1937)); *id.* at 232 ("The statute of limitations ... does not prevent a creditor who has filed an unsecured claim, from amending it into a secured claim, and asserting a security, after the period for filing has expired." (quoting *Lewith v. Irving Trust Co.*, 67 F.2d 855, 856 (2d Cir.1933)).

The Sixth Circuit's emphasis on liberality, along with its pointed omission of any discussion as to whether the amending creditor's mistake was excusable, suggest to me that a creditor who by inadvertence fails to timely correct a defective claim may do so after the bar date so long as no other parties will be prejudiced as a result. This conclusion is bolstered by the fact that none of the cases cited by *Meade Tool & Die* in support of the liberal amendment policy contain any discussion whatsoever regarding whether the failure to file a timely amendment was excusable or justifiable. *See* 164 F.2d at 230–31 (citing *Garvin v. Hickam*, 91 F.2d 323 (10th Cir.1937); *In re International Match Corp.*, 69 F.2d 73 (2d Cir.1934); *Cook v. Union Trust Co.*, 71 F.2d 645 (4th Cir.1934); *Globe Indemnity Co. v. Keeble*, 20 F.2d 84 (4th Cir.1927); *In re Fiegel, supra.*).

Thus *Miss Glamour Coat*'s third factor is misleading to the extent it suggests that negligence on the part of the amending creditor may warrant refusal to allow the amendment.[14] To the contrary, I believe a

---

12. *Cf. In re Pioneer Inv. Servs. Co.*, 943 F.2d 673, 678 (6th Cir.1991) (Criticizing the "dramatic ambiguity" of the bar-date notice received by the creditor.).

13. Beaver explained that it "thought [its proof of claim] had been mailed in December 1990," and was "surprised to learn" on April 16, 1991, that the claim "had apparently never been received

by the Court." Page 2 of Beaver's Brief in Support of Motion to Allow Claim.

14. The same criticism applies with respect to the "justification for the Service's failure to request extension of the bar date," *Miss Glamour Coat*'s fourth factor. In contrast to the IRS and other governmental entities, however, Beaver could not have sought an extension of the

fundamental premise underlying the rule which freely permits amendments of claims is that a creditor's lack of due diligence generally does not justify disallowing the amendment. Indeed, to suggest otherwise would mean that amendments to claims would ordinarily not be allowed, since untimely amendments are usually attributable to inadvertence by the claimant or claimant's counsel.[15]

■■■ Of course, the conduct of an amending creditor is relevant insofar as it evidences some improper ulterior motive, as *Meade Tool & Die* itself suggests. *See* 164 F.2d at 230 (Amendments to proofs of claim are to be liberally allowed where "no fraud appearing."). And for what it's worth, an argument could be made that a creditor's ability to amend a defective claim is jeopardized where the creditor's negligence is particularly blatant. *Cf. In re Rosinski,* 759 F.2d 539, 542 (6th Cir.1985) ("Though amendments to schedules are generally to be granted liberally, Ms. Rosinski must advance some justification for the reopening sufficient to show that she did not intentionally or *recklessly* avoid listing the debt." (emphasis added)). But I do not believe that the liberal amendment rule contemplates the disallowance of amendments in run-of-the-mill cases like this one involving a simple oversight or inadvertence on the creditor's part in failing to timely file the amendment. Accordingly, I conclude that application of this rule calls for allowance of Beaver's amending proof of claim so long as there is no fraud on Beaver's part and such allowance would not prejudice other parties.[16] *Cf. In re Walls & All, Inc.,* 127 B.R. 115, 117 (W.D.Pa.1991) ("[A]bsent contrary equitable considerations or prejudice to the opposing party, amendments to proofs of claim should be freely permitted."); *In re Futuronics Corp.,* 23 B.R. 281, 283 (S.D.N.Y.1982) ("The crucial inquiry [in determining whether to allow a proof of claim to be amended] is whether the opposing party would be unduly prejudiced by the amendment."); *In re Leonard,* 112 B.R. 67, 71, 20 B.C.D. 561 (Bankr.D.Conn.1990) ("Ordinarily, in the absence of prejudice to the opposing party or some other contrary equitable consideration, amendments to claims are allowed."); *Key,* 64 B.R. at 788 ("[A] timely proof of claim is amendable in the absence of 'contrary equitable considerations or prejudice.'" (quoting *In re W.T. Grant Co.,* 53 B.R. 417, 420 (Bankr. S.D.N.Y.1985))). No allegation has been made, nor is there any evidence, that Beaver's conduct in connection with its claim has been fraudulent or otherwise inequitable. Thus the sole remaining issue is whether allowance of Beaver's claim as timely would prejudice other creditors.

■■■ In *In re Ashland Steel Co.,* 168 F. 679 (6th Cir.1909) the court permitted a late amendment in spite of the fact that other creditors would receive reduced dividends as a result. The court explained as follows:

> Nor do [the amending] creditors seek to gain any advantage over the petitioners [creditors who opposed the amendment] ..., except that the petitioners may lose the increase in dividends which they would gain by shutting the [amending creditors] out; and the sum of the whole matter is that those creditors are put on the same plane with the petitioners, a position to which they are equally entitled, unless by some slip, which the law

---

claims-filing bar date. *See* F.R.Bankr.P. 3002(c) and 9006(b). This factor is therefore not relevant here.

**15.** In *Meade Tool & Die,* the Sixth Circuit all but accepted as a given the fact that such cases will involve negligence of some kind on the amending creditor's part. *See, e.g.,* 164 F.2d at 230 ("Amendments ... to correct ... *mistakes* are liberally allowed where ... the mistake was made through *ignorance of law or fact....*" (emphasis added)); *id.* at 231 ("[I]n the furtherance of justice amendments to claims may be

allowed because of *mistake or error."* (emphasis added)).

**16.** The allowance of any tardy amendment to a proof of claim also requires a preliminary determination that the "amendment" is not in fact "a guise for filing an untimely new claim." *In re Bondi's Valu–King, Inc.,* 126 B.R. 47, 49 (N.D.Ohio 1991). That is obviously not the case here, however, as the liabilities referenced in both Beaver's formal and informal proofs of claim are clearly one and the same.

regards as fatal, they have lost it. The petitioners have no equity which requires a reversal of the order of the District Court [allowing amendment].

168 F. at 681–82. Thus, the fact that other creditors in this case will receive a smaller distribution than they would receive if Beaver's claim were not allowed does not establish the kind of "prejudice" which would preclude amendment.[17]

■ Rather, the type of prejudice which would bar a creditor from amending its proof of claim typically involves an irrevocable change in position or some other detrimental reliance on the status quo. *See In re Northeastern Int'l Airways,* 99 B.R. 487 (Bankr.S.D.Fla.1989); *In re City of Capitals, Inc.,* 55 B.R. 634, 637–38 (Bankr.D.Md.1985); *see also supra* n. 11.[18] That kind of prejudice might be present in this case if the allowance of Beaver's amendment were to drop the dividend to unsecured creditors below the threshold required by 11 U.S.C. § 1325(a)(4): since neither the trustee nor other creditors of the estate any longer have the opportunity to object to the plan's confirmation on that ground, they would in effect be forever precluded from exercising a legal right granted to them by the Code. *Cf. In re La Difference Restaurant, Inc.,* 29 B.R. 178, 183 (Bankr.S.D.N.Y.1983), *aff'd,* 63 B.R. 819 (S.D.N.Y.1986) (Equitably estopping the IRS from asserting a tax deficiency that was not included either in its proof of claim or an agreement between the IRS and the debtor fixing the latter's tax liability, citing the debtor's reliance on the agreement in proposing, and obtaining confirmation of, its chapter XI plan, and noting that "[i]f the Government is allowed to invalidate such reliance, the creditors' and the debtor's rights will be unjustly impaired.").

But as previously stated, *supra* n. 1, the Debtor's plan would satisfy § 1325(a)(4) even if Beaver is permitted to perfect its claim. Thus other creditors have not been prejudiced in this regard.

On the other hand, if Beaver's "perfecting" amendment were to relate back to the date its informal claim was filed, then the propriety of distributions already made by the trustee to creditors with unsecured claims could be called into question, with the attendant implication of liability on the trustee's part. *See supra* pp. 465–66. Although such detrimental consequences are exactly the kind of prejudice which should preclude amendment, they are easily avoided here by holding, as I do, that Beaver's (potential) right to share in the distribution did not vest until its amending proof of claim was filed. *Cf. In re Kessler,* 184 F. 51, 53 (2d Cir.1910) (" '[A] proof of claim' which is defective in some substantial particular may be amended ... subsequent to the [bar date], ... although the effect of such amendment may be that 'proof of claim' is thereby *effectively* made only after the [bar date]." (emphasis added)). Since Beaver's amendment would otherwise be subject to disallowance based on the prejudice to other parties that would result, *see In re Kelly,* 95 B.R. 758 (Bankr. D.Mont.1989), restricting the amendment to "prospective" application is consistent with the principle of liberally allowing amendments to proofs of claim.

To summarize, I hold that Beaver's letter to the trustee, timely submitted to the Court on February 1, 1991, constituted an informal proof of claim which, standing alone, did not entitle Beaver to share in the distribution of estate assets. I further hold that Beaver's proof of claim filed on

**17.** If it did, amendments would rarely be permitted, since other creditors will nearly always receive a reduced dividend if a contested amendment is allowed.

**18.** The courts have similarly focused on detrimental reliance in various other contexts when determining whether a petitioner is entitled to equitable relief. *See, e.g., Compania Transatlantica Espanola v. Hartford Accident & Indemnity Co.,* 950 F.2d 105 (2d Cir.1991) (Granting motion to vacate stipulation withdrawing notice of appeal.); *Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 597 (9th Cir.1991) (Tolling statute of limitations for challenging timber sales.); *United States v. Blanco,* 844 F.2d 344, 349 n. 4 (6th Cir.), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988) (Allowing government to reverse its position concerning defendant's standing.); *Hardage v. Herring Nat'l Bank,* 837 F.2d 1319, 1324 (5th Cir.1988) (Amendment of exemptions claimed by chapter 7 debtor.).

April 16, 1991, served as an amendment which corrected the defects in Beaver's informal proof of claim, thereby entitling Beaver to share on an even basis with other creditors holding nonpriority unsecured claims in distributions made subsequent to the date the amending proof of claim was filed.  An order to this effect has been entered.